DOLPHUS E. AND MARY J. SCHIRMER, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 32772-85.     Filed August 12, 1987.

*Burk Bishop*, for the petitioner.
*Bruce K. Meneely*, for the respondent.

FAY, *Judge*: Respondent determined deficiencies in, and additions to, petitioners' Federal income tax as follows:

| Petitioner | Year | Deficiency | Additions to tax | | |
| | | | Sec. 6661(a) | Sec. 6653(a)(1) | Sec. 6653(a)(2) |
| --- | --- | --- | --- | --- | --- |
| Dolphus E. and | | | | | |
| Mary J. Schirmer | 1981 | $11,157.00 | 0 | $7,557.85 | ([1]) |
| Dolphus E. Schirmer | | | | | |
| (only) | 1982 | 19,527.17 | $1,952.72 | 976.35 | ([1]) |
| | 1983 | 16,940.29 | 1,694.03 | 847.01 | ([1]) |

[1]50 percent of the interest due on the underpayment caused by negligence.

After concessions, the issues are (1) whether petitioners' activity with respect to a farm is an activity engaged in for

profit, (2) whether petitioner Dolphus E. Schirmer is liable for the addition to tax under section 6661(a),[1] and (3) whether petitioners are liable for additions to tax under sections 6653(a)(1) and 6653(a)(2).

### FINDINGS OF FACT

Some of the facts are stipulated and are found accordingly. The stipulation of facts and exhibits attached thereto are incorporated herein by reference.

Petitioners Dolphus E. Schirmer and Mary J. Schirmer resided in Tulsa, Oklahoma, when they filed their petition herein. In 1981, petitioners were husband and wife and filed a joint Federal income tax return. In 1982, petitioners were divorced. Petitioner Dolphus E. Schirmer (herein petitioner) filed a separate return for taxable years 1982 and 1983.

During the years in issue, petitioner owned 554 acres of land in Paraloama, Arkansas (the farm). Petitioner was employed as a mechanical engineer in Tulsa, Oklahoma, during the years in issue and Mary J. Schirmer was employed as a secretary in 1981. Petitioners did not reside on the farm during the years in issue and at the time of trial had not resided on the farm for many years. Petitioners did not maintain a separate set of books or a separate checking account for expenses and income with respect to the farm.

Petitioners reported no income from the farm for the 1978 to 1983 taxable years. The amounts of loss from the farm reported by petitioners for such years are as follows:

| Year | Amount of loss |
|---|---|
| 1978 | ($10,053) |
| 1979 | (14,332) |
| 1980 | (8,552) |
| 1981 | (10,114) |
| 1982 (Petitioner Dolphus E. Schirmer only) | (13,286) |
| 1983 (Petitioner Dolphus E. Schirmer only) | (12,240) |

The major portion of the losses was attributed to depreciation deductions taken with respect to two houses located on the farm.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

In 1984, by chance, petitioner sold some timber to buyers who had made arrangements to purchase timber from petitioner's sister. Petitioner received $8,247.75 from that sale. Petitioners also received a total of $2,100 in 1978 and 1979 as a result of a lawsuit brought against an individual who grazed cattle on the farm without permission. Petitioners derived no other income from their farming activity from 1978 to 1984.

Petitioners' adjusted gross income from other sources, as reflected on their Federal income tax returns for the taxable years 1977 through 1983, was as follows:

| Year | Adjusted gross income |
|------|-----------------------|
| 1977 | $235,003 |
| 1978 | 191,245 |
| 1979 | 231,027 |
| 1980 | 251,650 |
| 1981 | 308,913 |
| 1982 (Petitioner Dolphus E. Schirmer only) | 328,681 |
| 1983 (Petitioner Dolphus E. Schirmer only) | 254,174 |

On the average, petitioner spent 2 or 3 days a month tending to the affairs of the farm. The record is unclear as to whether petitioner remained in Tulsa, Oklahoma, when he attended to farm affairs. Petitioners did not plant crops or lease the farm to others during the years in issue. Only one-half of the farm had timber growing on it and the timber was grown naturally. Petitioners did not have an estimate as to how much income could be derived from the farm through tree farming. In 1980, petitioners advertised for a manager in the newspaper and interviewed 12 to 15 applicants. Petitioners failed to hire any of the applicants and have not advertised again for a manager. Throughout the years in issue, petitioner's employment as a mechanical engineer took priority over his farming activity.

Petitioner developed what expertise he has in farming from his work on his father's farm before he was 20 years old. During the years in issue, petitioner consulted with a county agent for advice as to what crops were most suitable for planting on the farm. In 1983, petitioner also commissioned the Arkansas Forestry Commission to prepare a Forest Management Plan. Petitioner did not follow the suggestions of the county agent nor did he implement any

of the suggestions contained in the Forestry Management Plan. Petitioners did not raise cattle on the farm and did not lease any part of the farm or the houses thereon to others.

Petitioner's family visited the farm 4 to 6 times a year for 2 to 4 days during each visit. Petitioner's sister also stayed on the farm 2 or 3 times a year and stayed from 3 days to a week during each visit. Petitioner's children and grandchildren stayed on the farm for several weeks each year.

Petitioners did little with respect to the farm during the years in issue. Petitioner stated at trial that he was not "psychic" and therefore did not know when the farm would become profitable. Petitioner's sole attempt to improve the profitability of the farm, aside from consulting with the county agent and commissioning a Forest Management Plan, consisted of talking to his neighbors to "find out where they were making money."

In the late 1970's, the farm had a value of $500 per acre and had since fallen in value. Comparable property was sold for $200 per acre several months before trial.

In the notice of deficiency, respondent disallowed petitioners' claimed losses from the farm for the taxable years in issue on the basis that petitioners' farming activity was not engaged in for profit. Respondent also determined additions to tax pursuant to sections 6661(a) and 6653(a)(1) and (2).

## OPINION

We will first determine whether petitioners' activity with respect to the farm is an activity engaged in for profit. Whether an activity is engaged in for profit turns on whether the taxpayer has a bona fide objective of making a profit. *Dreicer v. Commissioner*, 78 T.C. 642 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); *Engdahl v. Commissioner*, 72 T.C. 659, 666 (1979); *Golanty v. Commissioner*, 72 T.C. 411, 426-427, (1979), affd. in an unpublished opinion 647 F.2d 170 (9th Cir. 1981). A taxpayer's objective is a question of fact to be determined from all the facts and circumstances. *Allen v. Commissioner*, 72 T.C. 28, 34 (1979). Greater weight is to be given to objective facts than to a taxpayer's mere statement of intent. *Engdahl v. Commissioner, supra* at 666; sec. 1.183-2(a), Income Tax Regs. The

burden of proof is on petitioners. *Golanty v. Commissioner, supra* at 426; Rule 142(a).

Both parties cite the nine factors in section 1.183-2(b), Income Tax Regs., as determinative to the disposition of this issue. The nine factors are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, that are earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation involved in the activity. Sec. 1.183-2(b), Income Tax Regs. These factors are not exclusive and are to be applied according to the unique facts of each case. Accordingly, no one factor, nor majority of the nine factors, need be considered determinative. *Golanty v. Commissioner, supra* at 426-427.

Petitioners have failed to prove that the farming activity was an activity engaged in for profit. The record contains no objective facts that prove a bona fide objective of making a profit.

The manner in which petitioners carried on the farming activity does not support their claim of profit objective. Petitioners maintained no separate books or checking accounts for the income and expenses related to the farm. Petitioner stated that he worked on a farm until he was nearly 20 years of age, but failed to specify the extent of his farming knowledge. Petitioners did not live on the farm and petitioner only spent an average of 2 or 3 days each month tending to the affairs of the farm. Petitioners failed to hire a manager or any workers for the farm. Furthermore, petitioner took no positive action to follow the advice of the county agent whom he consulted nor did he follow the recommendations contained in the Arkansas Forestry Commission's Forest Management Plan.

Petitioners failed to show that they had any reasonable expectation that the assets used in the farming activity might appreciate in value. The farm had substantially

depreciated in value since petitioner acquired it. Furthermore, at trial, petitioner stated that he had no idea when the farm would become profitable.

Petitioner was successful as a mechanical engineer and placed more importance on that activity than his farming activity. Petitioners experienced a long history of losses with respect to the farm prior to, during, and subsequent to the years in issue. The farm never operated at a profit.[2] Furthermore, during the years in issue, the farm losses were used to offset petitioners' substantial income from other sources, such income ranging from $254,174 to $328,681.

Finally, the elements of personal pleasure and recreation involved in the activity also tend to refute petitioners' position. The record shows that petitioners' family, including petitioner's sister and grandchildren, each spent several weeks each year on the farm. Since there was no evidence that petitioners' family worked on the farm when they were there, we can conclude that they retreated to the farm for pleasure.

In sum, when the facts of this case are examined in light of the factors provided in section 1.183-2(b), Income Tax Regs., petitioners' position has no merit.

We now turn to the addition to tax determined by respondent under section 6661(a). Section 6661(a) imposes an addition to tax if there is a substantial understatement of income tax. There is an understatement where the amount of tax shown on the return is less than the amount required to be shown on the return. A substantial understatement occurs where the understatement exceeds the greater of $5,000 or 10 percent of the amount of tax required to be shown on the return. The amount of the addition to tax under section 6661(a) is equal to 10 percent of any underpayment attributable to the substantial understatement. Where an item is not attributable to a tax shelter,[3] the understatement may be reduced by such item, and the addition to tax accordingly reduced if the taxpayer's treatment of the item was based on substantial authority, sec. 6661(a)(2)(B)(i), or if the taxpayer had ade-

---

[2] The only two incidents of income relating to the farm in the record arose from a fortuitous event and a law suit.

[3] See sec. 6661(b)(2)(C)(i). Petitioners' farming activity does not constitute a "tax shelter" as defined for purposes of sec. 6661. See sec. 6661(b)(2)(C)(ii).

quately disclosed on the return or in a statement attached to the return the relevant facts affecting such item's tax treatment, sec. 6661(b)(2)(B)(ii).[4]

Petitioner argues that his treatment of the losses relating to his farming activity was based on substantial authority pursuant to section 6661(b)(2)(B)(i). Petitioner also argues that he had adequately disclosed on the return the relevant facts affecting the treatment of the losses relating to the farming activity pursuant to section 6661(b)(2)(B)(ii). For the reasons we state below, petitioner has not satisfied the requirements of section 6661(b)(2)(B)(i) or (ii), and we therefore sustain respondent's determination of the addition to tax under section 6661(a).

Petitioner argues that his position is supported by substantial authority. The standard of "substantial authority" requires that, when the facts and authorities are analyzed with respect to the taxpayer's case, the weight of the authorities that support the taxpayer's position should be substantial, when compared with those supporting the contrary position. H. Rept. 97-760 (Conf.) at 575 (1982),

---

[4]Sec. 6661 provided as relevant herein,

SEC. 6661(a). ADDITION TO TAX.—If there is a substantial understatement of income tax for any taxable year, there shall be added to the tax an amount equal to 10 percent of the amount of any underpayment attributable to such understatement.

(b) DEFINITION AND SPECIAL RULE.—

    (1) SUBSTANTIAL UNDERSTATEMENT.—

        (A) IN GENERAL.—For purposes of this section, there is a substantial understatement of income tax for any taxable year if the amount of the understatement for the taxable year exceeds the greater of—

            (i) 10 percent of the tax required to be shown on the return for the taxable year, or

            (ii) $5,000.

                \*      \*      \*      \*      \*      \*      \*

    (2) UNDERSTATEMENT.—

        (A) IN GENERAL.—For purposes of paragraph (1), the term "Understatement" means the excess of—

            (i) the amount of the tax required to be shown on the return for the taxable year, over

            (ii) the amount of the tax imposed which is shown on the return, reduced by any rebate (within the meaning of section 6211(b)(2)).

        (B) REDUCTION FOR UNDERSTATEMENT DUE TO POSITION OF TAXPAYER OR DISCLOSED ITEM.—The amount of the understatement under subparagraph (A) shall be reduced by that portion of the understatement which is attributable to—

            (i) the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment, or

            (ii) any item with respect to which the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return.

Sec. 6661(a) has been amended. See note 8 *infra.*

1982-2 C.B. 600, 650. Thus, a position with respect to the tax treatment of an item that is arguable but fairly unlikely to prevail in court would satisfy a reasonable basis standard, but not the substantial authority standard. Sec. 1.6661-3(a)(2), Income Tax Regs. A taxpayer's belief that the authorities with respect to the tax treatment of an item constitute substantial authority is not taken into account in determining whether there is substantial authority. Sec. 1.6661-3(b)(1), Income Tax Regs. In determining whether there is substantial authority, only the following will be considered authority: applicable provisions of the Internal Revenue Code and other statutory provisions; temporary and final regulations construing such statutes; court cases; administrative pronouncements (including revenue rulings and revenue procedures); tax treaties and regulations thereunder, and Treasury Department and other official explanations of such treaties; and congressional intent as reflected in committee reports, joint explanatory statements of managers included in Conference Committee reports, and floor statements made prior to enactment by one of the bill's managers. Sec. 1.6661-3(b)(2), Income Tax Regs. In the instant case, when all the facts and authorities are considered, petitioner's position has scant authority to support it while the weight of the authorities supporting respondent's position is substantial. See, e.g., *Miles v. Commissioner*, T.C. Memo. 1983-206; *Breckenridge v. Commissioner*, T.C. Memo. 1983-66; *LaMusga v. Commissioner*, T.C. Memo. 1982-742; *Tarutis v. Commissioner*, T.C. Memo. 1982-313; *Hambleton v. Commissioner*, T.C. Memo. 1982-234; *Dauer v. Commissioner*, T.C. Memo. 1982-53, affd. in an unpublished opinion 685 F.2d 437 (8th Cir. 1980); *Lewellen v. Commissioner*, T.C. Memo. 1981-581, affd. in an unpublished opinion 705 F.2d 440 (1st Cir. 1983); *Pickren v. Commissioner*, T.C. Memo. 1981-52; *Pickering v. Commissioner*, T.C. Memo. 1979-243, affd. 652 F.2d 616 (6th Cir. 1981). Therefore, petitioner's reliance on section 6661(b)(2)(B)(i) is misplaced.

Petitioner also argues that he adequately disclosed the relevant facts affecting the treatment of the deductions relating to his farming activity. Petitioner argues that by completing Schedule F for farm income and expenses and

Form 4562 for depreciation and amortization, he had made adequate disclosure under section 6661(b)(2)(B)(ii). Petitioner did not make specific references to section 6661 on his returns.

The statute does not set forth what constitutes "adequate disclosure" of "relevant facts." Under generally applicable regulatory authority, respondent may prescribe the form of such disclosure. H. Rept. 97-760 (Conf.) at 575-576 (1982), 1982-2 C.B. 600, 650.

Respondent's regulations provide two types of disclosure under section 6661(b)(2)(B)(ii): disclosure in statements attached to the return, sec. 1.6661-4(b), Income Tax Regs., and disclosure on the return, sec. 1.6661-4(c), Income Tax Regs. Petitioner has not attached a statement to his return; therefore, section 1.6661-4(b), Income Tax Regs., is not applicable here.

Section 1.6661-4(c), Income Tax Regs., provides that respondent may by revenue procedure prescribe the circumstances in which information provided on the return will be adequate disclosure for section 6661. Consistent therewith, respondentissued Rev. Proc. 83-21, 1983-1 C.B. 680, applicable to returns filed in 1983, and Rev. Proc. 84-19, 1984-1 C.B. 433, applicable to returns filed in 1984.[5] These Revenue Procedures list categories of controversies and forms that constitute sufficient disclosure to each controversy. They do not list Schedule F or Form 4562 for the controversy at issue here.[6] Accordingly, petitioner has not satisfied the requirements of the relevant Revenue Procedures issued pursuant to section 1.6661-4(c), Income Tax Regs. Further, petitioner did not make specific reference to section 6661 on his returns.

Our inquiry does not end here, however. Where a taxpayer fails to comply with the Revenue Procedures issued in accordance with section 1.6661-4(c), Income Tax Regs., and fails to make specific reference to section 6661, the requirements of adequate disclosure on the return can nonetheless be satisfied by providing on the return sufficient information to enable respondent to identify the potential contro-

[5]The two returns at issue with respect to the sec. 6661 additions to tax are the 1982 and 1983 returns which were filed, respectively, in 1983 and 1984.

[6]The Revenue Procedures do not list Form 4562, and list Schedule F, Form 1120, or Form 1120S, as adequate disclosure only for a reserve for bad debts.

versy involved. S. Rept. 97-494 at 274 (1982). In this regard, petitioner merely listed on Schedule F and Form 4562 the amount of farm income and expenses and the depreciation and amortization he claimed. Such information, without more, was insufficient to enable respondent to identify the potential controversy involved here, that is, whether petitioner engaged in the activity for profit.[7] We hold that petitioners have failed to adequately disclose the relevant facts relating to the farming activity deductions.

For the foregoing reasons, we hold that petitioner may not claim the benefits of section 6661(b)(2)(B)(i) or (ii) and we sustain respondent's determination of the addition to tax under section 6661(a).[8]

We now turn to whether petitioners are liable for the additions to tax imposed under section 6653(a)(1) and (a)(2). Section 6653(a)(1) provides for an addition to tax of 5 percent of the underpayment if any part of the underpayment is due to negligence or intentional disregard of rules

[7]Sec. 6661 was added to the Internal Revenue Code by the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324. The general explanation of this act, prepared by the Staff of the Joint Committee on Taxation, also lends support to our holding. The general explanation provides that the standard of disclosure under sec. 6661(a)(2)(B)(ii) requires "greater disclosure than is necessary to avoid the six-year statute of limitations provided for in section 6501(e)(1)(A)." Staff of Joint Comm. on Taxation, General Explanation of the Tax Equity and Fiscal Responsibility Act of 1982, at 218 (J. Comm. Print 1982). The extended statute of limitations pursuant to sec. 6501(e)(1)(A) is triggered by the omission of more than 25 percent of the gross income stated in the return. Sec. 6501(e)(1)(A)(ii) states, however, that in "determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item." The disclosure required to trigger sec. 6501(e)(1)(A)(ii) and avoid application of the extended period of limitations provided by sec. 6501(e)(1)(A) has been held to require production of a "clue" with respect to the omission of gross income. *University Country Club, Inc. v. Commissioner*, 64 T.C. 460, 470 (1975), citing *Colony, Inc. v. Commissioner*, 357 U.S. 28 (1958). Petitioner has at best provided only a clue to the nature of the controversy.

[8]The notice of deficiency in which respondent determined the sec. 6661(a) additions to tax against petitioner was issued on May 31, 1985. As of that date, the sec. 6661(a) addition to tax was equal to 10 percent of the underpayment attributable to a substantial understatement. See note 4 *supra*. Sec. 6661(a) has twice been amended since then. The Tax Reform Act of 1986, Pub. L. 99-514, sec. 1504(a), 100 Stat. 2085, 2743, increased the sec. 6661(a) addition to tax to 20 percent of the underpayment attributable to a substantial understatement for returns the due date of which, determined without regard to extensions, is after Dec. 31, 1986. The Omnibus Reconciliation Act of 1986, Pub. L. 99-509, sec. 8002(a), 100 Stat. 1874, 1951, increased the sec. 6661(a) addition to tax to 25 percent of the underpayment attributable to a substantial understatement for additions to tax assessed after Oct. 21, 1986. Respondent has not amended his answer to seek an increase to the sec. 6661(a) addition to tax over the amount determined in the notice of deficiency. Accordingly, we express no opinion at this time as to the effect of either of the above-referenced acts on sec. 6661(a). We merely sustain respondent's determination of sec. 6661(a) additions to tax equal to 10 percent of the underpayment attributable to the substantial understatement.

or regulations. *Commissioner v. Asphalt Products*, b/r U.S. b/r (1987). Petitioners bear the burden of proof on this issue. Rule 142(a); *Enoch v. Commissioner*, 57 T.C. 781 (1972). After considering the entire record, we conclude that petitioners were well educated individuals who should have known that they could not claim deductions and losses for their farming activity that was not engaged in for profit. We therefore sustain respondent's determination of the addition to tax pursuant to section 6653(a)(1). Section 6653(a)(2) provides for an addition to tax in an amount equal to 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment due to negligence or intentional disregard of rules and regulations for the period beginning on the last day for payment of the underpayment. Since we have found that petitioners' underpayment attributable to the farm activity was due to negligence or intentional disregard of rules or regulations, we also sustain respondent's determination of addition to tax under section 6653(a)(2) with respect to that portion of the underpayment.

To reflect the foregoing and concessions,

*Decision will be entered under Rule 155.*