CHARLES E. CRIM AND STEPHANIE J. CRIM, Petitioners v. Commissioner of Internal Revenue, Respondent
Crim v. Commissioner
Docket No. 30547-87.
United States Tax Court
T.C. Memo 1989-249; 1989 Tax Ct. Memo LEXIS 249; 57 T.C.M. (CCH) 495; T.C.M. (RIA) 89249; May 23, 1989. Harry Boyd McNutt, Jr., and David J. Waynick, for the petitioners. Paul M. Kohlhoff, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined deficiencies in petitioners' income taxes and additions to tax for 1982 and 1983 as follows: [1] Sec. 6661 Year
Deficiency
Additions to Tax
1982
$ 7,915.21 $ 1,979.00  1983
12,709.00
3,177.00  The issues for decision are (1) whether petitioners engaged in a farming activity during 1982 and 1983 with a bona fide objective *251 of making a profit, and (2) if not, whether petitioners are liable for an addition to tax under section 6661 for a substantial understatement of income tax for those years. At the time the petition was filed, Charles E. Crim (hereinafter petitioner) and his wife, Stephanie J. Crim, were legal residents of Lebanon, Tennessee. They filed their joint Federal income tax returns for 1982 and 1983 with the Internal Revenue Service Center, Memphis, Tennessee. Petitioner was employed full-time as an airline pilot based in Pittsburgh, Pennsylvania, at least from 1978 to the date of the trial. The amount of his salary for each of the years 1978 through 1986 is set forth in the following table: 1978
$ 48,660.00 1979
56,000.00 1980
62,787.00 1981
100,035.00
1982
116,799.00
1983
123,075.00
1984
129,961.00
1985
138,267.00
1986
144,929.00
In April, 1974, petitioner purchased 94.5 acres of farm land in Wilson County, Tennessee, for a price of $ 56,000. The land was located in an area with small farms which were run by owners who had other jobs. Petitioner kept his job as a pilot and went to the farm on most days when he was not on duty as a pilot. *252 Located on the farm when petitioner bought it were a small (780 sq. ft.) house, an old frame barn with a dirt floor, wood siding and metal roof, and a metal garage or shed. The fields had grown up in brush and trees. The fences were held up by vines and brush and the barn "had deteriorated quite a bit." Nothing had been done on the property for 15 years. When petitioner bought the property, it had 5 acres of pasture land. At the time of the trial, 25 acres were in pasture and over half of the property was still wooded. The remainder was in fields. In 1975, petitioner bought 6 cows and a bull. He made no projections at that time as to when his cattle raising venture would be profitable. The record does not show how many cattle petitioner had on hand at any time after his initial purchase. As to the years in controversy, he testified: Q. Mr. Crim, do you know how many cattle you had in 1982? A. No, I don't. Q. Do you know how many you had in 1983? A. No, I don't. During at least part of the period, petitioner paid neighbors to look after his cattle when he was not at the farm. The neighbors proved to be unreliable. In the early part of 1985, petitioner lost over *253 half of his cattle due to exposure to the cold weather and lack of water and feed. He then sold the rest of his cattle and did not replace them in 1985. He did not have any cattle on the farm in 1986. In 1984, petitioner built a dwelling with 2,108 square feet on the property where he lives while he is at the farm. Petitioner has never made a profit from the operation of the farm. The following table shows the items sold, income, expenses and losses for the years 1975 through 1986 (with the exception of 1977 for which figures are not available): Year
Item Sold
Income
Expenses
Losses
1975
$ - 0 -   $ 12,446.33
($ 12,446.33)
1976
Timber
1,167.10
11,125.27
( 9,958.17) 1977
N/A   N/A   N/A    1978
- 0 -  12,057.22
(12,057.22)  1979
Cows
2,379.60
7,737.80
(5,358.20)   1980
Cows & Calves
2,620.00
14,292.00
(11,672.00)  1981
- 0 -  12,300.00
(12,300.00)  1982
- 0 -  18,943.00
(18,943.00)  1983
- 0 -  28,777.00
(28,777.00)  1984
- 0 -  23,664.00
(23,664.00)  1985
18 Cows & Calves
4,000.00
22,415.00
(18,415.65)  1986
- 0 -  13,075.00
(13,075.00)  *254 That petitioner had no cattle in 1986 and yet deducted expenses of over $ 13,000 is unexplained. In their dispute over the deductibility of petitioner's losses from the farm, both parties base their arguments on section 183 and the regulations thereunder. Section 183(a) provides that no deduction shall be allowed for an activity which is "not engaged in for profit." Excepted by section 183(b) are (1) deductions allowable without regard to whether the activity is engaged in for profit and (2) deductions which would be allowed if the activity were engaged in for profit but not exceeding the gross income from the activity. Section 183(c) defines the term "activity not engaged in for profit" to mean "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." To be entitled to the deductions at issue, petitioner must have an "actual and honest objective of making a profit." Dreicer v. Commissioner,78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). The issue is factual and turns mainly on objective facts rather than declarations *255 of purpose. Dunn v. Commissioner,70 T.C. 715, 720 (1978), affd. 615 F.2d 578 (2d Cir. 1980). Some of the relevant factors to be considered in deciding whether an activity is a business or a hobby are listed in section 1.183-2(b), Income Tax Regs. They include: (1) the manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. Not all of these factors are applicable in every case and no one factor is conclusive. Allen v. Commissioner,72 T.C. 28, 34 (1979). Petitioner has the burden of proving that he had an actual and honest objective of making a profit from his cattle raising operation. Under *256 the foregoing standards, he has not carried that burden. Petitioner did not manage the cattle raising venture as if it were a business designed to make a profit. Petitioner introduced in evidence ledgers in which the expenses which he deducted on his tax returns were recorded. The ledgers contain no entries, however, on the cattle he owned, how many he owned, when he bought them or what he paid for them. Nor do the ledgers contain any information on the development of his herd. In fact, as noted above, he testified that he did not even know how many cattle he owned during either one of the years in controversy. As a full-time airline pilot, petitioner earned well over $ 115,000 per year in 1982 and 1983 and earning that much salary consumed the major portion of his time. He could visit the farm between flying assignments only by flying from Pittsburgh to Nashville and driving his car from the Nashville airport to the farm, about 25 or 30 miles away. He was away from the farm three or four days at a time. During bad weather, when his livestock needed attention, he obviously had difficulty going to the farm. Petitioner testified that he worked 230 days on the farm in each of *257 the years before the Court, but the record as a whole convinces us that this testimony grossly exaggerates the amount of time he devoted to farm work. We find that he worked on the farm only sporadically, especially during the winter months. Although petitioner had not lived or worked on a farm since he was 19 years of age, he must have known that raising livestock requires constant care and attention. Yet he worked not only as a full-time pilot but also as the owner and operator of a construction company and an equipment leasing company from which he deducted on his tax return total net losses of over $ 30,000 in 1982 and approximately $ 8,000 in 1983. We do not find it surprising that he lost over half of his cattle in early 1985 because of exposure to the cold weather and lack of feed and water. We do find it puzzling that the deducted expenses for 1985 ($ 22,415) continued to be almost as high as in earlier years and came to over $ 13,000 in 1986 when he admittedly owned no cattle. The record contains no specific information on the number of cattle in petitioner's herd, the progress or lack of progress in increasing the herd up to the date of its liquidation in 1985, or *258 any other concrete facts on which we could base a finding that, despite at least 11 years of uninterrupted losses, petitioner's actual objective was to make a profit. The stipulation shows that petitioner sold 18 cows and calves in 1985 for $ 4,000 or less than $ 225 each. At that price, he would have had to produce and sell 84 to 127 head of cows and calves in order to cover his claimed expenses of $ 18,943 and $ 28,777 for 1982 and 1983, respectively. There is no evidence even suggesting the possibility that the large number of cattle needed to produce 84 to 127 marketable units each year could be sustained on petitioner's small 94.5-acre farm, over half of which is wooded. A "record of substantial losses over many years and the unlikelihood of achieving a profitable operation are important factors bearing on the taxpayer's true intention." Golanty v. Commissioner,72 T.C. 411, 426 (1979), affd. in an unpublished opinion 647 F.2d 170 (9th Cir. 1981). Petitioner argues, however, that his farm was rapidly increasing in value and that the increase exceeded the operating losses. When he sells the property, he argues, he will realize a net profit. *259 Petitioner presented the testimony of an expert that the property had a value of $ 325,000 as of August 23, 1988. Respondent's expert placed a value of $ 250,000 as of October 24, 1988. The property was valued by respondent's expert not as a farm but as a potential residential subdivision. Section 1.183-1(d)(1), Income Tax Regs., provides: Where land is purchased or held primarily with the intent to profit from increase in its value, and the taxpayer also engages in farming on such land, the farming and the holding of the land will ordinarily be considered a single activity only if the farming activity reduces the net cost of carrying the land for its appreciation in value. In this case, petitioner's farming activity did not reduce the cost of carrying the land for its appreciation in value. As we interpret petitioner's tax returns, his direct cost of carrying the land consisted of taxes of $ 273 in 1982 and $ 293 in 1983 and interest of $ 1,741.48 in 1982 and $ 3,053.66 in 1983. In no year for which the figures are available was petitioner's income from cattle sales sufficient to cover the other expense deductions claimed on his return and leave anything to apply on *260 his taxes and interest to say nothing of the other costs of maintaining the property. Thus, under the regulation, petitioner's farming activity and the holding of his land may not be considered a single activity. Fields v. Commissioner,T.C. Memo. 1981-550, on which petitioner relies, is distinguishable on its facts. Contrary to the facts in that case, petitioner's objective in keeping the land was not to attempt to develop a profitable cattle raising business. In fact, our study of the deductions claimed on the Schedules F of petitioner's returns, the nature of the equipment and machinery for which depreciation was claimed, and the testimony regarding its use, convinces us that most of petitioner's deducted expenses were incurred in clearing, improving and maintaining petitioner's property as his country home rather than in carrying on a cattle raising business. Many of the deducted expenses such as telephone, utilities, auto parts, contract labor, culverts, gravel and the like, could have had only a tangential relationship to cattle raising. The assets for which a depreciation deduction of $ 11,467.92 for 1983 was claimed include a bulldozer, two tractors, *261 a back hoe, a digger, a truck, a dump truck, a Peter-bilt truck, a Ford pick-up, a Plymouth cab, and two loaders. We can understand how some of this machinery would be used in improving a country home but the record does not explain how such equipment and machinery would be used in running a few head of cattle on approximately 45 acres of cleared land. Petitioners have not carried their burden of proving that the farm activity was carried on with an actual and honest objective of making a profit. They are not, therefore, entitled to the disallowed deductions. Respondent also determined that petitioners are liable for an addition to tax under section 6661 as a result of the "substantial understatement of income tax" in each year before us. Under section 6661(b)(1)(A), there is a substantial understatement where the understatement exceeds the greater of "10 percent of the tax required to be shown on the return for the taxable year, or * * * $ 5,000." The deficiencies shown above exceed 10 percent of petitioner's corrected liability unless that liability can be reduced by section 6661(b)(2)(B). Section 6661(b)(2)(B) provides for the reduction of an understatement by that portion *262 of the understatement which is attributable to: (i) the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment, or (ii) any item with respect to which the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return. In H. Report No. 97-760 (Conf.) (1982), 1982-2 C.B. 600, 650, the provision on substantial supporting authority is explained as follows: Whether the taxpayer's filing position is or was supported by substantial authority will depend on the circumstances of the particular case. It will be necessary to weigh court opinions, Treasury regulations and official administrative pronouncements (such as revenue rulings and revenue procedures) that involve the same or similar circumstances and are otherwise pertinent, as well as the Congressional intent reflected in the committee reports, to determine whether the position is supported by present law and may be taken with the good faith expectation that it reflects the proper treatment of the item. The conferees did not adopt an absolute standard that a taxpayer may take a position on a return *263 only if, in fact, the position reflects the correct treatment of the item because, in some circumstances, tax advisors may be unable to reach so definitive a conclusion. Rather, the conferees adopted a more flexible standard under which the courts may assure that taxpayers who take highly aggressive filing positions are penalized while those who endeavor in good faith to fairly self-assess are not penalized. We have found as a fact that petitioner did not prove that he carried on his farm activity with an actual and honest objective of making a profit. We do not think he endeavored in good faith to report his true tax liability. No authority has been presented that would support the claimed deductions in the light of the facts of this case. Antonides v. Commissioner,91 T.C. 686, 702-704 (1988); Schirmer v. Commissioner,89 T.C. 277, 284 (1987); Gjesteby v. Commissioner,T.C. Memo. 1987-617. As to the adequacy of the disclosure on petitioner's return, the regulations provide two types of disclosure: disclosure in a statement attached to the return, sec. 1.6661-4(b), Income Tax Regs., and disclosure on the return, sec. 1.6661-4(c), *264 Income Tax Regs. Petitioner did not attach a disclosure statement to either one of the returns in controversy. As part of the returns, he attached Schedules F, Farm Income and Expenses, on which he listed the amounts of his claimed deductions. He also attached Forms 4562, Depreciation, on which he showed the computation of the depreciation deduction claimed on the Schedules F. Nothing in these forms disclosed the facts on which the deductions turned. The disclosure that was made was not sufficient to reduce the liability pursuant to section 6661(b)(2)(B). Schirmer v. Commissioner, supra at 285-286; Gjesteby v. Commissioner, supra.
Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and as in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩