DENNIS J. KOBZA AND DORIS R. KOBZA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kobza v. Commissioner
Docket No. 8845-90
United States Tax Court
T.C. Memo 1992-176; 1992 Tax Ct. Memo LEXIS 187; 63 T.C.M. (CCH) 2524; March 24, 1992, Filed *187 Decision will be entered under Rule 155. Michael M. Buettner, for petitioners. Jeffrey L. Heinkel, for respondent. WRIGHT
WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: In her notice of deficiency, respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661
1983
$ 13,844
$ 692.20
[1]
$ 3,461.00
1984
5,760
288.00
[1]
1,440.00
1985
5,525
276.25
[1]
1,381.25
Respondent concedes the section 6661 [1] addition to tax for taxable year 1984. Therefore, a Rule 155 computation will be necessary in this case. *188 The issues for decision are: (1) Whether petitioners entered into the trade or business of selling electric power for profit thereby entitling them to claim an investment tax credit and deductions relating to the power generator. We hold that petitioners did not enter the electric power generation activity for profit. (2) Whether petitioners are liable for additions to tax for negligence or intentional disregard of the rules and regulations under section 6653(a)(1) and (2). We hold that petitioners are liable for the section 6653(a) additions to tax. (3) Whether petitioners are liable for section 6661 additions to tax attributable to substantial understatements of income tax for taxable years 1983 and 1985. We hold that petitioners are liable for the additions to tax under section 6661 for taxable years 1983 and 1985. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein. Petitioners Dennis and Doris Kobza resided in Palo Alto, California, at the time the petition was filed in this case. For the years in issue, petitioner husband was a self-employed architect. Petitioner *189 wife was the office manager and corporate secretary-treasurer for her husband's highly profitable architectural business. In 1981, petitioners began plans to build their personal residence. Petitioners had originally planned to install a conventional heating system in their new home. However, while browsing through an architecture magazine, petitioner husband noticed an advertisement for a photovoltaic system (hereinafter PV system) for home use. A PV system consists of panels which collect ultraviolet rays and convert them into electricity. In an effort to learn more about the PV system, petitioner husband asked Ray Rapuano, an energy consultant, to look into the availability, efficiency, and cost of the system. Petitioner husband frequently hired Rapuano to determine the energy efficiency of the commercial buildings he designed as an architect. Petitioners utilized Rapuano's services primarily for title 24 calculations. A title 24 calculation is a calculation required by the State of California to ensure that a building is energy efficient. At the time petitioners were considering the PV system, both petitioners were extremely busy operating the architectural business. *190 Therefore they relied totally on Rapuano to perform research related to the PV system. Rapuano also performed the title 24 calculations for petitioners' new home. Prior to petitioners' residence, Rapuano had never performed consulting work in connection with a building utilizing a solar power plant to be operated as a business for profit. Although petitioners paid Rapuano $ 1,200 for his title 24 calculation work on their residence, petitioners did not pay Rapuano any compensation for his consulting work on the PV system. Rapuano did not have a degree in business, economics, or accounting, and never provided petitioners with any profit projections with respect to the operation of the PV system as a business. To learn more about the PV system, Rapuano contacted ARCO, the manufacturer of the PV system, who referred him to Dave Biron of Solar Marine Systems. Dave Biron, a promoter of the PV system, suggested to Rapuano and petitioners that they should purchase the PV system for their residence, and establish a business to sell the power generated by the system to a utility company. During 1982, Biron represented that the PV system would generate between 9,000 and 10,000 kilowatt *191 hours per year. There is no evidence that petitioners or Rapuano contacted independent third parties to verify Biron's estimates of kilowatt hour production. During 1982, petitioners estimated that the total energy usage of their new home would be 24,000 kilowatt hours per year. Therefore, any income derived from the sale of electric power to a utility company would serve to reduce petitioners' electric bill for their residence. Biron and Rapuano recommended to petitioners that they sell the power from their PV system to Pacific Gas & Electric Co. (hereinafter PG&E). In 1982, PG&E purchased electric power at a price of $ .0708 per kilowatt hour. However, PG&E did not service the area where petitioners resided. The area where petitioners lived was serviced by the city of Palo Alto. The city of Palo Alto purchased electric power at $ .0170 per kilowatt hour for the first 300 kilowatt hours per month and at $ .0246 per kilowatt hour for the amounts in excess of 300 kilowatt hours. Petitioners desired to transfer the power generated by the PV system to the city of Palo Alto who would then wheel it over to PG&E. This would enable petitioners to sell the electric power at the *192 higher PG&E rates. The city of Palo Alto never committed to wheel power over to PG&E. PG&E never committed to purchasing electric power from petitioners. Without a written commitment from PG&E, petitioners went ahead and signed a contract with Solar Marine Systems for the PV system on June 28, 1982. Petitioners understood that the June 28 agreement was a contractual commitment for the installment of the PV system. On August 9, 1982, petitioners made a downpayment of $ 5,509.20 to Solar Marine Systems for the PV system. Sometime between August 9, 1982, and November 2, 1982, PG&E notified petitioners that it would not purchase electric power generated by PV system. After petitioners learned of PG&E's refusal to purchase their power, they wanted to avoid installing the PV system because they did not see themselves "making a profit from the small amount that the city of Palo Alto was paying". However, on November 2, 1982, petitioners entered an agreement with the city of Palo Alto for the purchase of the electric power generated by petitioners' PV system. Petitioners' residence has two meters in connection with the energy system. Meter No. 1 shows the total electricity generated *193 by the PV system. Meter No. 2, a reversing meter, turns clockwise when petitioners' residence is using Palo Alto's energy and turns counterclockwise when Palo Alto is receiving energy from petitioners' PV system. Palo Alto reads meter No. 2 to determine the net energy that petitioners used from Palo Alto or conversely, to determine the net energy Palo Alto used from petitioners. Palo Alto does not read meter No. 1. Petitioners normally read meter No. 1 at the end of the year to determine the yearly output and to determine the amount of income to report on Schedule C. The PV system became operational in May 1983. However, petitioners did not read meter No. 1 at the end of 1983. Petitioners did, however, claim business deductions and an investment tax credit in connection with the energy-generating activity in 1983. For the last 7 months of 1983 and the 12 months of 1984, meter No. 1 showed 11,250 kilowatt hours of energy generated, an average of 592 kilowatt hours per month. Meter No. 1 showed 5,160 kilowatt hours produced during 1985. The city of Palo Alto determined petitioners' electric power bill by reading meter No. 2. Petitioners never received a payment in the form *194 of cash or a check from the city of Palo Alto for energy generated by petitioners and consumed by the city of Palo Alto. Petitioners presented no evidence indicating that the PV system ever produced energy in excess of the amount needed to operate their residence. Petitioners produced no evidence of profit projections or any other form of economic analysis that they utilized prior to or during the years in issue to evaluate profit potential. Petitioners attempted to introduce profit projections prepared by Ben Priest, their Certified Public Accountant (hereinafter CPA). Priest testified, however, that the profit projections were prepared just a few months prior to trial. Therefore, petitioners did not evaluate or rely on the profit projections prepared by Priest when deciding to install the PV system. Prior to installing the PV system and after placing the system in operation, petitioners never spoke with any person who operated a similar activity for profit. Petitioners had no expectation that the PV system would appreciate in value. Petitioner wife testified that due to advancing technology, their PV system most likely decreased in value. Petitioners did not maintain a *195 set of records in connection with the energy-generating activity. In 1983, petitioner wife prepared petitioners' Federal income tax return. Petitioner wife had a significant amount of business experience emanating from her duties as corporate secretary-treasurer of her husband's architectural business and as a bookkeeper for several partnerships in which petitioners were involved. For taxable year 1983, petitioners claimed an investment tax credit of $ 8,979. Petitioners' Form 3468 listed the basis of property qualifying for the investment credit as $ 89,787 (10 percent of $ 89,787 = $ 8,979). Of the $ 89,787 of basis, $ 63,619 represented the cost of the PV system. Approximately $ 8,000 represented the cost of installing the PV system. The balance of the $ 89,787 basis used to compute the investment tax credit purportedly represented qualifying property from one of petitioners' partnerships. Respondent disallowed the entire investment tax credit in her notice of deficiency. For the portion of the investment tax credit unrelated to the PV system, petitioners produced no documentation to substantiate the type of property or the cost of the property. At the end of 1983, petitioners *196 failed to read meter No. 1, and reported no income on Schedule C. However, petitioners claimed business deductions on Schedule C of $ 10,841, resulting in a net loss of $ 10,841. In 1983, petitioners had Form W-2 wage income of $ 254,777. In 1984, petitioners' Federal income tax return was prepared by their CPA, Ben Priest. In 1984, petitioners reported income from the PV system of $ 551, and a depreciation expense deduction of $ 12,070, resulting in a Schedule C net loss of $ 11,519. During that same year, petitioners had Form W-2 wage income of $ 310,000.
Priest also prepared petitioners' 1985 income tax return. In 1985, petitioner reported income from the PV system of $ 247, and a depreciation expense deduction of $ 11,521, resulting in a Schedule C net loss of $ 11,274. In that same year petitioners had Form W-2 wage income of $ 402,222. After 1985, Priest advised petitioners to discontinue treating the energy-generating activity as a business for tax purposes. OPINION Petitioners contend that they are entitled to the deductions claimed on Schedule C for taxable years 1983, 1984, and 1985, and to the investment tax credit claimed in 1983 because they were engaged in *197 the trade or business of selling electricity with the actual and honest objective of making a profit. Respondent argues that the deductions and investment tax credit relating to the PV system should be disallowed pursuant to sections 183 and 262 because petitioners did not have a profit objective, and the deductions in connection with the activity represent deductions for personal living expenses. Respondent further contends that the portion of the investment tax credit unrelated to the PV system is unsubstantiated and should be disallowed. Section 162 allows a deduction for ordinary and necessary business expenses incurred in carrying on a trade or business. Petitioners are entitled to the deductions claimed for depreciation only if the PV system was used in a trade or business or held for the production of income. Sec. 167(a). An investment credit is allowable only if the PV system is depreciable. Sec. 48(a)(1). Property is used in a trade or business, or held for the production of income, only if the taxpayer has an actual and honest profit objective. Hirsch v. Commissioner, 315 F.2d 731 (9th Cir. 1963), affg. T.C. Memo. 1961-256; Levy v. Commissioner, 91 T.C. 838, 871 (1988); *198 Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). Section 183(a) provides the general rule that if an individual's activity is not engaged in for profit, no deduction attributable to such activity will be allowed except as otherwise provided in that section. Profit means economic profit, independent of tax savings. Surloff v. Commissioner, 81 T.C. 210, 232-233 (1983). While there need not be a reasonable expectation of profit, the activity must have been entered into with the objective of making a profit. Fox v. Commissioner, 80 T.C. 972 (1983), affd. without published opinion 742 F.2d 1441 (2nd Cir. 1984), affd. sub nom. Barnard v. Commissioner, 731 F.2d 230 (4th Cir. 1984), affd. without published opinions sub nom. Hook v. Commissioner, Kratsa v. Commissioner, Leffel v. Commissioner, Rosenblatt v. Commissioner, Zemel v. Commissioner, 734 F.2d 5, 6-7, 9 (3d Cir. 1984). Profit objective is a fact to be determined from all the facts and circumstances. Independent Electric Supply, Inc. v. Commissioner, 781 F.2d 724, 727 (9th Cir. 1986), *199 affg. Lahr v. Commissioner, T.C. Memo. 1984-472. Greater weight is given to objective facts than to the taxpayer's mere statements of intent. Beck v. Commissioner, 85 T.C. 557, 570 (1985). Section 1.183-2(b), Income Tax Regs., sets forth a nonexclusive list of relevant factors, which are in large part a synthesis of prior case law, to be considered in determining whether an activity has been engaged in for profit. Benz v. Commissioner, 63 T.C. 375, 382-383 (1974). These factors include: (1) The manner in which the activity is carried on; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profit, if any, which is earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. No single factor is controlling, but rather *200 it is an evaluation of all the facts and circumstances in the case, taken as a whole, which is determinative. Abramson v. Commissioner, 86 T.C. 360, 371 (1986); sec. 1.183-2(b), Income Tax Regs.
Manner in Which the Taxpayer Carries on the Activity
A taxpayer's failure to operate an activity in a businesslike manner is indicative of a lack of profit objective. Elliott v. Commissioner, 90 T.C. 960 (1988), affd. without published opinion 899 F.2d 18 (9th Cir. 1990); Cohen v. Commissioner, T.C. Memo. 1984-237. The facts indicate that petitioners failed to operate their energy activity in a businesslike manner. Petitioners expended $ 63,619 on an energy-producing system to be used in connection with their residence. Petitioners did not utilize any profit projections to determine the profitability of the electric power generating activity prior to or during the years in issue. Petitioners did not contact their CPA or any other expert to determine whether the power-generating activity could be profitable. Petitioners stated that they were so busy operating their architectural business that they had *201 to rely on energy consultant, Ray Rapuano, to investigate the effectiveness of the PV system. Rapuano did not supply petitioners with any profit projections. Rapuano only attempted to find a buyer for petitioners' energy who was willing to pay the best price. Furthermore, petitioners did not contact other purchasers of the PV system to investigate the performance or profitability of the PV system. Petitioners placed a great deal of emphasis on the fact that the system would have had more profit potential if petitioners could have sold their energy to PG&E. However, petitioners agreed to purchase and install the PV system before PG&E committed to buying energy produced by petitioners' system. Between August and November 1982, petitioners were notified that PG&E would not agree to buy energy from them. After PG&E refused to buy power from petitioners, petitioner wife admitted that they did not see themselves ever making a profit on the PV system. In November 1982, petitioners entered into a contract with the city of Palo Alto for the sale of their electric power. In May 1983, the PV system became operational. Petitioners generally read meter No. 1 at the end of the year to *202 determine the amount of income to report on Schedule C. At the end of 1983, petitioners failed to read meter No. 1 to determine the amount of energy produced and sold to the city of Palo Alto. On their 1983 Schedule C, petitioners reported zero income from the activity, yet claimed business deductions and an investment tax credit in connection with the activity. Therefore, prior to placing the PV system in operation, and before preparing their 1983 income tax return, petitioners knew that there was no potential for earning a profit from the energy-generating activity. In 1982, PG&E purchased electric power at a price of $ .0708 per kilowatt hour. The city of Palo Alto purchased electric power at a maximum price of $ .0246 per kilowatt per hour in 1982. Even optimistically assuming energy production of 10,000 kilowatt hours per year and using PG&E rates, it would take approximately 90 years to cover the $ 63,619 cost of petitioners' PV system. Of course, petitioners never received the benefit of the rates paid by PG&E. Using the rate paid by the city of Palo Alto, it would take petitioners over 250 years to pay for the PV system. Moreover, even the projections prepared by *203 petitioners' CPA a few months before trial do not support petitioners' position that the PV system could have been profitable. Priest's profit projections factored in the purported tax benefits emanating from the energy-generating activity. However, profit means economic profit, independent of tax savings. Surloff v. Commissioner, supra at 232-233. In any event, petitioners did not have Priest's profit projection at the time they purchased the system or began operating the system. Petitioners' lack of concern in maintaining adequate records for the activity is also indicative of their unbusinesslike conduct. Petitioners did not maintain accounting records in connection with the PV system, and did not determine, record, or report the amount of income from the energy-generating activity in 1983. All the foregoing factors indicate that the energy-generating activity was operated in an unbusinesslike fashion, and petitioners had little concern for the profitability of such activity. The Expertise of the Taxpayer or His Advisors
Preparation for the activity by extensive study of its accepted business, economic, and scientific practices, or consultation *204 with those who are expert therein, may indicate that the taxpayer has a profit objective where the taxpayer carries on the activity in accordance with such practices. Sec. 1.183-2(b)(2), Income Tax Regs. Failure to make sufficient inquiry into the feasibility of an activity is evidence of the lack of profit objective. Gjesteby v. Commissioner, T.C. Memo. 1987-617. In the instant case, petitioners had no expertise in the solar power business. They consulted with Ray Rapuano, whom they considered to be an expert. However, Rapuano's expertise involved energy regulatory compliance. In his work, Rapuano was responsible for ensuring that buildings were energy efficient in order to pass the title 24 calculation requirements of the State of California. Prior to his assignment involving petitioners' residence, Rapuano had no work experience relating to a building or residence which included a solar power plant to be operated as a business for profit. Rapuano has no degree in business, economics, or accounting. Rapuano did not provide any profit projections to petitioners that would indicate he investigated or performed an extensive study of the profitability of *205 the PV system. Furthermore, while petitioners paid Rapuano $ 1,200 for his title 24 calculation work, they did not pay him any compensation for his consulting work relating to the PV system. Clearly, Rapuano's expertise involved determining the energy efficiency of a building and not the profitability of the business of selling electric power. The recommendation to utilize the PV system as a legitimate business was provided by Dave Biron, a promoter of the PV system who had a direct financial stake in any sale of the system. If petitioners were seriously interested in making a profit, they would have inquired of disinterested persons more knowledgeable on the cost, effectiveness, and profitability of the system. Petitioners did not consult their CPA prior to the installation of the PV system or during taxable year 1983, the initial year the system was placed in operation. Petitioner wife prepared petitioners' 1983 income tax return and treated the operation of the PV system as a business by reporting a loss on Schedule C. Petitioners' lack of concern for achieving an economic profit is evidenced by their failure to consult their CPA, coupled with their reliance on the advice *206 of sales representative Dave Biron, a nonobjective source, to evaluate a decision to purchase and operate the PV system as a business. Time and Effort Expended by the Taxpayer in Carrying on the Activity
At the time petitioners invested in the PV system, they were extremely busy operating an architectural business. In fact, petitioners relied almost entirely on Rapuano to research the benefits of the PV system. Once the system became operational, petitioners presented little or no evidence as to their active involvement with the energy-producing activity. Petitioners even failed to perform the minimal task of reading the meter at the end of 1983 to determine the kilowatt production of the PV system. Petitioner wife was experienced in business record keeping, yet she did not keep adequate records for the energy-producing activity. Petitioners failure to keep adequate business records concerning the PV system evidences their lack of interest in the system as a profit-making venture. Expectation That Assets Used in the Activity May Appreciate in Value
The term "profit" encompasses appreciation in the value of assets, such as land, used in the activity. Thus, the *207 taxpayer may intend to derive a profit from the operation of the activity, and may also intend that, even if no profit from current operations is derived, an overall profit will result when appreciation in the value of land used in the activity is realized, since income from the activity together with appreciation of land will exceed expenses of operation. Sec. 1.183-2(b)(4), Income Tax Regs.
In the instant case, petitioners introduced no testimony or documentary evidence indicating that they expected the PV system to appreciate in value. Petitioner wife testified that she did not believe the PV system would appreciate in value. She also stated that due to improvements in solar technology, the PV system probably depreciated in value. Certainly this factor does not provide support for petitioners' contention that they entered the energy-generating activity for profit. The Success of the Taxpayer in Carrying on Other Similar or Dissimilar Activities
The fact that the taxpayer has engaged in similar activities in the past and converted them from unprofitable to profitable enterprises may indicate that he is engaged in the present activity for profit, even though the activity *208 is presently unprofitable. Sec. 1.183-2(b)(5), Income Tax Regs.
While petitioners enjoyed great success in their architectural business, they had no prior success or experience in the solar energy business. Petitioners presented no evidence showing that they engaged in similar activities in the past and converted such activities from profitable to unprofitable enterprises. The disparity in activity and concern for their architectural business in comparison to their PV system activity, similarly evidences their lack of profit objective in the instant case. The Taxpayer's History of Income or Losses With Respect to the Activity
A series of losses during the initial or start-up stage of an activity may not necessarily be an indication that the activity is not engaged in for profit. However, where losses continue to be sustained beyond the period which customarily is necessary to bring the operation to profitable status, such continued losses, if not explainable as due to customary business risks or reverses, may indicate that the activity is not being engaged in for profit. A series of years in which net income is realized would be strong evidence that the activity is engaged *209 in for profit. Sec. 1.183-2(b)(6), Income Tax Regs.
During taxable years 1983 through 1985, petitioners' energy-generating activity never made a profit. After 1985, petitioners followed the advice of their CPA and no longer treated the operation of the PV system as a business on their tax return. From 1983 to 1985, petitioners reported income of $ 798 while reporting deductions totaling $ 34,432. As espoused in Cox v. Commissioner, T.C. Memo. 1965-5, a high ratio of expenses to receipts is evidence of lack of a profit objective. The amount of income reported by petitioners was in effect the amount by which the electric bill for their personal residence was reduced. Petitioners produced no evidence indicating that the PV system ever generated energy in excess of the amount of energy needed to operate their residence. The kilowatt hours generated by the PV system were far less than represented by Biron and substantially less than the profit projection prepared by Priest just a few months prior to trial. Because petitioners never did realize an economic profit from the operation of the PV system, this factor further supports respondent's position that petitioners *210 did not enter this activity with the objective of realizing an economic profit. The Amount of Occasional Profits, if Any, Which Are Earned
The amount of profits in relation to the amount of losses incurred, and in relation to the taxpayer's investment and the value of the assets used in the activity, may provide useful criteria in determining the taxpayer's objective. An occasional small profit from an activity generating large losses, or from an activity in which the taxpayer has made a large investment, would not generally be determinative that the activity is engaged in for profit. Sec. 1.183-2(b)(7), Income Tax Regs.
An opportunity to earn a substantial ultimate profit in a highly speculative venture is ordinarily sufficient to indicate that the activity is engaged in for profit even though losses or only occasional small profits are actually generated. Sec. 1.183-2(b)(7), Income Tax Regs. Petitioners made no profits and introduced no evidence showing an opportunity to earn a substantial ultimate profit. The Financial Status of the Taxpayer
The fact that the taxpayer does not have substantial income or capital from sources other than the activity may indicate *211 that an activity is engaged in for profit. Sec. 1.183-2(b)(8), Income Tax Regs. In Zuckerman v. Commissioner, T.C. Memo. 1984-192, this Court noted that the most characteristic features of an activity not operated for profit include large losses over a number of years, substantial income from other sources, and tax benefits. In the instant case, petitioners reported Form W-2 income during taxable years 1983, 1984, and 1985 in the amounts of $ 254,777, $ 310,000, and $ 402,222, respectively. Therefore, petitioners had sizeable income from which they could offset deductions. The net losses for these years totaled $ 33,634. Petitioners also claimed an investment tax credit from the activity. Therefore, petitioners received significant tax benefits by claiming that the activity was a business entered into for profit. Elements of Personal Pleasure or Recreation
Clearly, personal benefit inured to petitioners in this case. Petitioners were energy conscious individuals who installed the PV system as an energy saving device for their residence. Effectively, the PV system reduced petitioners' monthly electric bill for their personal residence. The benefit *212 most likely to be received by petitioners would arise if they were to ever sell the PV system as a part of their personal residence. Section 262 states that no deduction shall be allowed for personal, living, or family expenses. The purchase price and any expenses associated with the PV system were personal in nature and therefore not deductible. In conclusion, we find that every facet of petitioners' activity indicates that petitioners did not enter the energy-producing business with the objective of realizing an economic profit. Therefore, we sustain respondent's disallowance of the investment tax credit and deductions claimed by petitioners in connection with the PV system. In addition, we conclude that petitioners are not entitled to the portion of the investment tax credit not attributable to the cost of the PV system because petitioners produced no evidence to support this portion of the investment tax credit. Additions to Tax Under Section 6653(a)(1) and (a)(2)
Section 6653(a)(1) provides for an addition to tax equal to 5 percent of any underpayment if any part of the underpayment is due to negligence or intentional disregard of rules and regulations. Section *213 6653(a)(2) provides for an addition to tax equal to 50 percent of the interest payable on the deficiency with respect to the portion of the underpayment which is attributable to negligence or intentional disregard of the rules and regulations. Negligence under section 6653(a)(1) and (2) is the lack of due care or the failure to act as a reasonable person would act under the same circumstances where there is a legal duty to act. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners bear the burden of proving that no part of the underpayments for the years at issue is due to negligence or intentional disregard of rules and regulations. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757 (1972). Petitioners made little, if any, preliminary investigation of the potential profitability of the PV system. They relied on statements made by an energy consultant, Ray Rapuano, and a representative of Solar Marine Systems, Dave Biron, to conclude that they could treat the PV system as a legitimate business for tax purposes and obtain significant tax benefits. Moreover, on November 2, 1982, petitioners entered an agreement to sell power to the city *214 of Palo Alto at a rate that they either knew would not be profitable or negligently failed to determine whether at that rate they could generate a profit. With this knowledge available, petitioners placed the system in use in May 1983, and claimed an investment tax credit and deductions for taxable year 1983 when preparing their return sometime in 1984. Petitioners failed to keep records of the energy produced by the PV system in 1983 and did not report any income for 1983. However, petitioners did claim an investment tax credit and deductions for taxable year 1983. Petitioners continued to take deductions in connection with the activity for taxable years 1984 and 1985 until their CPA advised them to discontinue claiming such deductions. Petitioners have failed to prove they used due care or did what a reasonable and ordinarily prudent person would do under the circumstances. Therefore, respondent's determination regarding the additions to tax under section 6653(a)(1) and (2) is sustained. Additions to Tax Under Section 6661
With respect to returns due after December 31, 1982, section 6661(a) imposes an addition to tax equal to 25 percent of any underpayment attributable *215 to a substantial understatement of income tax. Pallottini v. Commissioner, 90 T.C. 498 (1988). A substantial understatement is one that exceeds the greater of either 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1). If a taxpayer has substantial authority for the tax treatment of an item on his return, the understatement is reduced by the amount attributable to such items. Sec. 6661(b)(2)(B)(i). Furthermore, if a taxpayer adequately discloses on his return the relevant facts pertaining to any tax item, the amount of understatement is reduced by the amount of such item. Sec. 6661(b)(2)(B)(ii). Respondent concedes that section 6661 is inapplicable to taxable year 1984. For taxable years 1983 and 1985, respondent maintains that petitioners have no authority for the position they took on their tax returns, and that petitioners did not adequately disclose such position. We agree with respondent that there is no authority for the position taken by petitioners on their 1983 and 1985 tax returns. Furthermore, section 6661(b)(2)(B)(ii) contemplates that the taxpayer will disclose the pertinent facts underlying his reporting *216 position. We have held that this provision requires that the taxpayer include sufficient information on the return to enable respondent to identify the potential controversy involved. See Schirmer v. Commissioner, 89 T.C. 277, 285-286 (1987) (merely listing on Schedule F and Form 4562 the amount of farm income and expenses and depreciation claimed, without more, is not sufficient to satisfy section 6661(b)(2)(B)(ii)). We hold that petitioners failed to adequately disclose the controversial position taken in the instant case. See sec. 1.6661-4(b) and (c), Income Tax Regs. Therefore, the additions to tax under section 6661 for taxable years 1983 and 1985 are sustained. Decision will be entered under Rule 155. Footnotes
1. 50 percent of the interest due on the entire deficiency.↩
1. All section references are to the Internal Revenue Code of 1954 in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩