EVERETTE M. AND ANNE P. EDWARDS, JR., Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Edwards v. Commissioner
Docket No. 11858-88
United States Tax Court
T.C. Memo 1990-70; 1990 Tax Ct. Memo LEXIS 70; 58 T.C.M. (CCH) 1394; T.C.M. (RIA) 90070; February 13, 1990
Jerome R. Eatman, Jr. and Maria *73 M. Lynch, for the petitioners. Ross A. Rowley, for the respondent. GALLOWAY
MEMORANDUM FINDINGS OF FACT AND OPINION GALLOWAY, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b) of the Internal Revenue Code of 1986 and Rules 180, 181, and 182. [1]
Respondent determined deficiencies in petitioners' Federal income taxes and additions to tax as follows: Addition to Tax
Year
Deficiency
Section 6661(a)
1983
$  7,032.36
$  1,758.09
1984
6,721.60
1,680.40
1985
7,015.64
1,754.00
The issues for decision are: (1) whether petitioners' commercial fishing activity during the years in issue constitutes an "activity not engaged in for profit" within the meaning of section 183(a); (2) whether petitioners are entitled to investment tax credits attributable to their fishing activity for taxable years 1983 and 1984; *74 (3) whether the investment tax credits claimed by petitioners in their fishing activity for years 1978 through 1981 are subject to recapture in 1983; and (4) whether petitioners are liable for additions to tax under section 6661(a) for years 1983, 1984, and 1985. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are so found. The stipulation of facts and related exhibits are incorporated herein by this reference. Petitioners Everette M. and Anne P. Edwards, husband and wife, resided in Apex, North Carolina, at the time they filed their petition in this case. They filed joint Federal income tax returns in each of the years in issue. Everette M. Edwards (petitioner) has been since 1974 a full-time employee, officer, and one-third shareholder of Carolina Plywood, a subchapter S corporation located in Apex, North Carolina. During the years in issue, petitioner received the following amounts as salary, dividends, and section 1366 reported profits from Carolina Plywood: 1983 1984 1985
Salary
$ 35,700.26
$ 42,392.48
$ 40,933.00
Dividends
12,000.00
14,000.00
22,000.00
Section 1366 Profits
--
25,134.00
30,907.00
TOTAL:
$ 47,700.26
$ 81,526.48
$ 93,840.00
*75 Petitioner and his wife had no substantial income other than that earned from Carolina Plywood. They have two children, who in 1983 were 27 and 34 years of age, married, and with children. Petitioner also owned a rental condominium unit located in Wilson, North Carolina, located 47 miles east of Apex. During 1984, he was appointed treasurer and director of the condominium's board. Petitioner realized net losses from this property in 1984 and 1985. Petitioner is an avid fisherman and boater. In 1975, he purchased a 28-foot 1974 Bertram boat which he named the "Evan." Petitioner used the boat for recreational fishing purposes. He maintained it at Atlantic Beach, North Carolina, which is approximately a 2-1/2 hour automobile drive from Apex. In July 1978, petitioner formed his commercial fishing venture known as "Evan Commercial Fishing," after a friend suggested that he sell his excess fish to a local fish market. Petitioner obtained a commercial fishing license from the North Carolina Division of Marine Fisheries for years 1983, 1984, and 1985. He primarily limited his fishing activity to weekends. Although petitioner was experienced in boating and fishing, he had never *76 operated a commercial fishing operation and knew little about its business aspects. Prior to entering into the activity, petitioner consulted with several full-time commercial fishermen about income potential. None discussed the profitability of a weekend fisherman. Petitioner did not estimate the operating costs or calculate the break-even level of operation above which he would make a profit. When petitioner commenced his commercial fishing activity, he modified the Evan by installing various equipment including electric rods and reels, adapter plates, a Loran Navigator Package, a fish box capable of holding 1,600 pounds of fish and ice, and a depth recorder used to locate rock shelves that fish inhabited. Petitioner initially started his operation trolling for fish; however, he changed it in 1981 to bottom-fishing, copying other commercial fishermen's operations. When petitioner fished, he hired one or two persons as his crew. Payment was contingent on the proceeds from the sale of fish. First, the proceeds were used to pay all costs for gasoline and ice utilized during a fishing trip. The remaining money was then divided between the crew and petitioner with petitioner receiving *77 two shares as captain and boat owner. During the years 1983, 1984, and 1985, petitioner's crew earnings totaled $ 588, $ 200, and $ 0, respectively. In 1984, petitioner purchased liability insurance for his crew following a commercial fisherman's recommendation. Petitioner testified that extensive work went into his commercial fishing venture. On Friday evening, he would drive to Atlantic Beach and purchase food, fuel, ice, and bait for the weekend. On Saturday, petitioner and his crew would fish from 1 a.m. until 5 p.m. for grouper, bee-liners, silver snapper, American red snapper, and mackerel. They spent Sunday cleaning and storing the boat and gear, gutting and selling the prior day's fish at a local fish market, "Capt. Ottis Fish Market," and doing miscellaneous errands or repairs. During the years 1983, 1984, and 1985, petitioner sold fish on 14, 4, and 12 occasions for a total of 3,894, 735, and 2,075 pounds, respectively. In conjunction with the commercial fishing activity, petitioner also chartered his boat for private fishing trips. Petitioner was prohibited from offering his boat for public charter because he did not possess a captain's license issued by the United *78 States Coast Guard necessary to operate and navigate a passenger carrying vessel. Petitioner completed the necessary requirements to obtain a captain's license in February 1987. Except for one occasion, all of his boat charters were to Carolina Plywood. The charter fees ranged from $ 400 in 1983 to $ 600 in 1985. During the years in issue, the boat was chartered a total of 8 occasions. Since 1978, petitioner has also competed annually in two fishing tournaments located near Atlantic Beach. He entered the "Big Rock Blue Marlin Tournament" and the "Cap'n Fannie's Billfish Tournament," believing he could win large amounts of prize money. Participants in these fishing tournaments competed for graduated cash prizes up to $ 100,000, based on the category entered, the number of participants in each category, and the size of fish caught. Tournament contestants were required to pay entry fees ranging from $ 400 to $ 1,900 to participate in these events. Several days prior to a tournament, petitioner would catch and prepare bait and convert his boat to tournament fishing by installing a fighting chair and other equipment. He hired a crew of three persons and paid them based on a contingency *79 arrangement. The prize money won by petitioner's boat would be split among petitioner and his crew after first deducting all expenses. During the years in issue, petitioner received no income from tournament fishing. He has only won a third place prize, in 1980 for $ 8,000, during his eight years of tournament fishing. Petitioner was personally involved with every aspect of his fishing operation. The boat was operated only with petitioner on board and under his control. Petitioner completed routine maintenance to the boat and its two engines or assisted his marine mechanic with major engine repairs. For years 1983, 1984, and 1985, petitioner incurred boat repair costs of $ 5,231, $ 5,897, and $ 7,812, respectively. Petitioner never opened a separate bank account for his fishing activities. The income he earned went into his personal funds. Petitioner did maintain records and receipts, reflecting his costs, expenses, disbursements, and other items incurred or received in his activity. At the end of each year of operation, he gave all the expense and income receipts to his accountant to prepare his income tax returns. For the taxable years 1978 through 1985, petitioner reported *80 losses from his commercial fishing activity on Form 1040, Schedules C, as follows: Taxes &
Profit
Year
Income
Expenses
Depreciation
Interest
(Loss)
1978
$  3,683
$  6,855 $  2,127    $    69  ($ 5,368)
1979
6,601
16,096 5,419    620  (15,534)
1980
12,829
18,682 5,894    823  (12,570)
1981
9,993
16,150 6,630    719  (13,506)
1982
7,037
13,035 6,618    737  (13,353)
1983
6,403
13,468 6,890    923  (14,878)
1984
3,239
15,236 5,606    937  (18,540)
1985
4,721
17,974 5,106    1,364  (19,723)
TOTAL:
$ 54,506
$ 117,496 $ 44,290    $ 6,192  ($ 113,472)
In addition, petitioner claimed investment tax credits on Form 3468 related to property used in his commercial fishing activity. Despite eight years of losses, petitioner never contemplated abandoning his fishing activity. He continues to operate his fishing venture. However, he has not claimed any expenses, deductions, or depreciation on his Federal income tax returns since 1985. *81 In his notice of deficiency, respondent disallowed all of petitioner's expense deductions or depreciation related to the commercial fishing activity for years 1983 through 1985. Additionally, he increased petitioner's 1983 and 1984 tax liability by $ 565 and $ 96, respectively, by disallowing investment tax credits claimed with respect to equipment purchased in those years. Respondent also determined an increase in petitioner's 1983 tax liability due to a recapture of 1978 through 1981 investment tax credits. Finally, respondent determined that petitioner's underpayments of tax liability in each year in issue were substantial and imposed additions to tax pursuant to section 6661(a). OPINION The first issue to be decided is whether petitioner's commercial fishing activity was not engaged in for profit within the meaning of section 183(a). Section 183(a) provides the general rule that if an individual engages in an activity, and "if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided by this section." Section 183(b)(1) provides that deductions which would be allowable without regard to *82 whether such activity is engaged in for profit shall be allowed. Section 183(b)(2) provides that deductions which would be allowable only if such activity is engaged in for profit shall be allowed, "but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of" section 183(b)(1). Section 183(c) defines an activity not engaged in for profit as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." Furthermore, section 183(d) provides the presumption that an activity was engaged in for profit if the gross income derived from the activity exceeds the deductions attributable to it for two or more years in a period of five consecutive years. Because petitioner sustained losses in the years 1978 through 1985, he is not entitled to rely on this presumption. The standard for determining under section 183 whether the expenses of an activity are deductible under either section 162 or section 212(1) or (2) is whether the taxpayer engaged in the activity "with the actual and honest objective of making a profit. *83 " Ronnen v. Commissioner, 90 T.C. 74, 91 (1988); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). While a reasonable expectation of profit is not required, the taxpayer's profit objective must be bona fide. Hulter v. Commissioner, 91 T.C. 371, 393 (1988); Allen v. Commissioner, 72 T.C. 28, 33 (1979). Whether a taxpayer had an actual and honest profit objective is a question of fact to be resolved from all relevant facts and circumstances. Hulter v. Commissioner, supra at 393; Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. in an unpublished opinion 647 F.2d 170 (9th Cir. 1981). The burden of proving such objective is on petitioner. Welch v. Halvering, 290 U.S. 111 (1933); Rule 142(a). In resolving this factual question, greater weight is given to the objective facts than to the taxpayer's after-the-fact statement of intent. Sec. 1.183-2(a), Income Tax Regs.; *84 Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986); Siegel v. Commissioner, 78 T.C. 659, 699 (1982). Section 1.183-2(b), Income Tax Regs., sets forth a nonexclusive list of nine objective factors relevant to the determination of whether an activity is engaged in for profit. These factors are: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, that are earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation involved in the activity. Not all of these factors are applicable in every case and no one factor is controlling. Sec. 1.183-2(b), Income Tax Regs.; *85 Abramson v. Commissioner, 86 T.C. 360, 371 (1986); Allen v. Commissioner, 72 T.C. at 34. After reviewing the entire record, we conclude that petitioner has not proven that he operated his commercial fishing activity with the requisite profit objective. An analysis of the factors relevant to this case follows: (1) The manner in which the taxpayer carries on the activity. Petitioner is an intelligent individual knowledgeable about business matters. However, he did not conduct his fishing activity in a businesslike manner. Prior to entering his fishing operation, petitioner made no attempt to analyze the costs, risks and returns of running the operation or calculate a break-even point based on expected revenue and expenses. Instead, petitioner testified that he assumed, based on conversations with several commercial fishermen, he could expect a profit. Petitioner sustained large losses for the five years prior to the first year in issue. We believe that petitioner would have reevaluated or redirected the operations of Evan Commercial Fishing by the beginning of 1983 had his objective been to make a profit. There was nothing to indicate this *86 was done. Petitioner also has bookkeeping skills, yet he did not establish a separate account for Evan Commercial Fishing. He did retain all receipts and maintain books and records. Petitioner testified that all receipts and records were given to his accountant annually to assist in filing his income tax returns. Given this background, petitioner did not indicate why he did not maintain a separate checking account or whether the books and records were kept for periodic evaluation for the purpose of cutting expenses, increasing profits, and evaluating the overall performance of the operation. Golanty v. Commissioner, 72 T.C. at 430. If petitioner had reviewed his books and records, he would have seen that the expenses alone were more than double the income earned. During the entire time petitioner operated his fishing venture, he never contemplated stopping his operation. Petitioner continues to engage in his fishing venture. However, he has not deducted expenses or depreciation since 1985. Since the formation of Evan Commercial Fishing, petitioner has fished sporadically rather than systematically. He sold fish in a haphazard casual manner. Instead of devoting *87 his time entirely to commercial fishing, petitioner entered fishing tournaments and chartered out his boat. During the years in issue, he commercially fished only a total of 30 occasions. In 1984, he commercially fished only four occasions, chartered his boat three occasions, and entered two fishing tournaments. Petitioner testified that his boat had engine problems requiring substantial repairs. It is difficult to believe that a majority of the year 1984 was used to repair the engine or that the repairs were substantial, because petitioner's maintenance expenses in 1984 were similar to all other prior years. Additionally, petitioner admitted that during that year he spent a significant amount of time at his condominium unit, leaving little time for his commercial fishing operation. The facts relating to this factor do not support petitioner's contention that he had the requisite objective of making a profit in his activity. (2) The expertise of the taxpayer or his advisors Prior to entering his commercial fishing operation, petitioner had no experience as a commercial fisherman. He also had limited experience with boating and fishing. He purchased his first and only boat in *88 1975. Prior to this, he had only chartered a boat several times for recreational fishing trips. Petitioner testified, in a vague fashion, that prior to starting his fishing activity he discussed commercial fishing and income potential with several persons in the business but gave no specifics. None of the people that he talked to commercially fished part-time, chartered out their boat, or tournament fished. They never actually took petitioner out and did not show him how to catch fish. Petitioner also did not prepare for his fishing activity by conducting an extensive study of accepted business practices. Three years after starting his operation, petitioner learned that bottom-fishing was the normal method of commercial fishing. Additionally, in 1984, petitioner learned that commercial fishermen purchased liability insurance for their crew. If petitioner had done any research prior to starting his operation, he would have already followed these practices. We find that petitioner's investigations and preparations were not adequate to support a profit objective. (3) The time and effort expended by the taxpayer in carrying on the activity (5) The success of the taxpayer in *89 carrying on other similar or dissimilar activities Although petitioner did devote time and effort to his fishing activity, the financing of his large losses required substantial outside income. Accordingly, petitioner continued to work full-time as an employee and officer of Carolina Plywood. His combined reported income and profits increased from $ 47,700 to $ 93,840 during the years in issue. Petitioner's two children were married, leaving him no dependents. Petitioner also admitted that he spent a substantial amount of time at his condominium unit in 1984. It appears, therefore, that petitioner must have spent less time in 1984 at his fishing activity than evidenced by the decrease in the number of times petitioner sold fish in 1984. Petitioner has never operated an activity similar to commercial fishing. However, in 1984 and 1985, he did engage in another activity not related to commercial fishing. Petitioner was an owner of a condominium unit which required substantial supervision. From this real estate activity, he reported losses. The facts relating to these factors do not support petitioner's claim that he had the requisite objective of making a profit. (4) The *90 expectation that assets used in the activity may increase in value During his fishing activity, petitioner used a 28-foot 1974 Bertram boat, fishing equipment, and a station wagon. He believed his boat's value had either remained constant or increased. There was no evidence presented to support this contention. If anything, the extensive maintenance costs, due to the effects of salt water and regular wear and tear, would indicate that the boat had not retained its original value. Therefore, petitioner could not have expected his boat to appreciate in value. The facts relating to this factor do not support petitioner's contention that he had the objective of making profit in his activity. (6) The taxpayer's history of income or losses with respect to the activity (7) The amount of occasional profits, if any, which are earned During the years 1978 through 1985, petitioner reported $ 54,506 gross receipts and expenses of over $ 117,000. He has only realized net losses from his activity. While losses during the start-up phase of an activity are not necessarily fatal to the section 183 determination, the ultimate goal of an activity engaged in for profit must be to realize *91 a net profit on the activity so as to recoup losses sustained previously. Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967). Petitioner made no investigation or calculations of profitability before starting his activity. He also did not evaluate his losses during the eight-year period in an effort to restructure his operation in order to recoup the losses which he had sustained. The reporting of continuous losses with no occasional profits earned is persuasive evidence of a lack of a requisite profit objective. (9) Elements of personal pleasure or recreation Although petitioner devoted time to his fishing activity, we find that petitioner did derive a great deal of personal and recreational pleasure from this activity. Petitioner has always enjoyed fishing. He started his commercial fishing operation after he had given away many fish to his family and friends. Petitioner made quite a few friends from his fishing activity. These friends worked as his crew for little pay. Petitioner also derived pleasure entering two sport fishing tournaments annually and chartering his boat to Carolina Plywood. Both activities *92 gave petitioner the opportunity to socialize as well as sport fish with friends. Petitioner testified that the boat was used only for commercial fishing purposes. Inconsistencies in fuel usage makes it difficult to believe petitioner did not use it for personal purposes. In 1984, petitioner fished less than in prior years, however, his fuel consumption was still relatively high. Petitioner also has children and grandchildren who liked boating and fishing. The presence of personal recreational pleasure indicates a lack of profit objective. After considering all the facts and circumstances, we find that petitioner did not engage in the commercial fishing activity with the bona fide objective of making a profit. Therefore, we hold that the losses claimed by petitioner with respect to his fishing activity will be allowed only as provided by section 183(b)(1). The second issue concerning petitioner's entitlement to investment tax credits attributable to his fishing activity for taxable years, 1983 and 1984, requires little discussion. An investment tax credit requires that a property be used in a trade or business or held for the production of income. *93 Sec. 38; sec. 48(a)(1); sec. 167(a). Our determination that petitioner's commercial fishing activity was not engaged in with the objective of making a profit is thus dispositive of this issue. Finoli v. Commissioner, 86 T.C. 697, 744-745 (1986); Pike v. Commissioner, 78 T.C. 822, 841-842 (1982), affd. in an unpublished opinion 732 F.2d 164 (9th Cir. 1984). Respondent is sustained on this issue. Our third issue for decision is whether investment tax credits claimed by petitioner for his fishing activity in years 1978 through 1981 is subject to recapture in 1983. Section 47(a)(1) requires a taxpayer to recapture a prior investment tax credit when the property on which the credit was based "is disposed of, or otherwise ceases to be section 38 property." In Williams v. Commissioner, T.C. Memo. 1987-308, we held that where no change occurred either in ownership or use of property, an investment tax credit may not be recaptured even though the taxpayer was not entitled to the credit in the year claimed. Here, petitioner used the property in an activity not engaged in for profit consistently throughout the 1978-1985 period. *94 No evidence was presented indicating a change in usage during 1983. Accordingly, we hold that petitioner's investment tax credit may not be recaptured in 1983. The final issue is whether petitioner is liable for the addition to tax pursuant to section 6661(a). Section 6661(a) provides for an addition to tax for a substantial understatement of income tax. An understatement is "substantial" if it exceeds 10 percent of the amount of tax required to be shown on the return for the taxable year or $ 5,000, whichever is greater. Sec. 6661(b)(1)(A). The amount of the addition to tax imposed by section 6661(a) equals 25 percent of any underpayment attributable to the substantial underpayment. Pallottini v. Commissioner, 90 T.C. 498 (1988). The addition to tax is reduced, however, if there was substantial authority for the taxpayer's treatment of the items in issue, or if the relevant facts affecting the tax treatment were adequately disclosed in the return or in a statement attached to the return. Sec. 6661(b)(2)(B)(i) and (ii). Petitioner substantially underreported taxable income on his joint tax return for all the years in issue. Petitioner argues that there *95 was substantial authority for his position regarding the claimed losses from his commercial fishing activity. Petitioner also contends that he adequately disclosed the relevant facts affecting the tax treatment of losses on his Federal income tax returns. For the reasons we state below, petitioner has not satisfied the requirements of section 6661(b)(2)(B)(i) or (ii). We have found as a fact that petitioner did not prove that he carried on his commercial fishing activity with an actual and honest objective of making a profit. Petitioner has therefore failed to prove that there was substantial authority for the claimed deductions resulting in the underpayment of tax liability. Schirmer v. Commissioner, 89 T.C. 277, 284 (1987); see also Gjesteby v. Commissioner, T.C. Memo. 1987-617. As to the requirement of adequate disclosure, petitioner did not attach a disclosure statement to the return. In this case, petitioner merely listed on his Schedules C, Profit or (Loss) From Business or Profession, and Forms 4562 the amount of fishing income and expenses, and the depreciation and amortization he claimed. *96 Nothing in these forms disclosed the facts on which the deductions turned. The disclosure that was made was insufficient to reduce the liability pursuant to section 6661(b)(2)(B)(ii). Schirmer v. Commissioner, supra at 285-286. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue. All rule references are to the Tax Court Rules of Practice and Procedure.↩