CARL WESLEY MURRY AND SHIRLEY ANN MURRY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Murry v. Commissioner
Docket No. 3090-92
United States Tax Court
T.C. Memo 1993-471; 1993 Tax Ct. Memo LEXIS 485; 66 T.C.M. (CCH) 1015; October 13, 1993, Filed *485 Decision will be entered under Rule 155. Carl Wesley Murry and Shirley Ann Murry, pro se. For respondent: Charles Pillitteri. RUWE
RUWE
MEMORANDUM OPINION RUWE, Judge: Respondent determined a deficiency in petitioners' 1986 Federal income tax and additions to tax as follows: Additions to Tax Deficiency
Sec. 6653(a)(1)(A)
Sec. 6653(a)(1)(B)
Sec. 6661
$ 30,939
$ 1,547
50 percent of the
$ 7,735
interest due on
$ 30,939
The issues for decision are: (1) Whether the sale of petitioners' convenience store inventory was improperly included in their installment-sale calculation; (2) whether the sale of petitioners' convenience store equipment resulted in depreciation recapture; (3) whether petitioners underreported capital gain resulting from the sale of their convenience store; (4) whether petitioners are entitled to claim Schedule C expense deductions of $ 16,659 and purchases of $ 75,101; (5) whether a sale of petitioners' tavern furniture resulted in depreciation recapture; and (6) whether petitioners are liable for the additions to tax determined by respondent. Some of the facts have been stipulated and are so found. The stipulation of facts, supplemental *486 stipulation of facts, and attached exhibits are incorporated herein by this reference. For purposes of convenience, our findings of fact and opinion for each issue are combined. Petitioners [1] resided at Beaumont, Mississippi, when they filed their petition. Petitioners filed their 1986 Federal income tax return using the cash method of accounting. During 1986, petitioners operated a convenience store (store). On June 11, 1986, petitioners sold the store for $ 100,000 to Rebecca Cenac. Pursuant to the sales contract, Ms. Cenac made a $ 30,000 downpayment, which petitioners received on June 11, 1986. The contract provided that the remaining $ 70,000 was to be made in 120 equal monthly installments of $ 925, beginning July 7, 1986, which included principal and interest of 10 percent. During 1986, Ms. Cenac made six installment payments, the principal portions of which totaled $ 2,093.55. Also during 1986, petitioner sold 6 acres *487 of land, a building, and its contents to his stepfather and mother for $ 15,000 and their assumption of the existing mortgage loan. Respondent's determination of the deficiency and additions to tax is presumptively correct, and petitioners bear the burden of proving that they are incorrect by a preponderance of the evidence. Rule 142(a); [2]Welch v. Helvering, 290 U.S. 111 (1933). Issue 1. Sale of Inventory
Petitioners reported the entire selling price of the store using the installment method. [3] In the notice of deficiency, respondent determined that $ 30,000 of the $ 100,000 selling price of the store was for inventory and was therefore includable in petitioners' gross income for 1986. *488 Section 453(a) provides that income from an installment sale shall be taken into account under the installment method, except as otherwise provided in section 453. Section 453(b)(2)(B) provides that an installment sale does not include a disposition of personal property of a kind required to be included in the inventory of the taxpayer if on hand at the close of the taxable year. While petitioners agree that inventory was sold, they seem to argue that since the sales contract made no separate provision for the sale of inventory apart from the land, building, and equipment, the entire sales price should be included in the installment calculation. We disagree. Section 453 requires that the sale of inventory be excluded from the installment-sale calculation. See sec. 453(b)(2)(B). Petitioners also disagree with respondent's determination that $ 30,000 of the sales price was for inventory. Ms. Moore, the revenue agent assigned to examine petitioners' return, testified that petitioner told her that the $ 30,000 downpayment was for the sale of the inventory and that $ 30,000 was a reasonable estimate of the inventory. Ms. Cenac testified that petitioner told her that the inventory *489 value was in excess of $ 30,000 at the time of the sale. She checked the inventory a few weeks after she purchased the store and determined that the value of the inventory was approximately $ 32,000. The inventory consisted of perishable items such as canned goods, Cokes, beer, bread, and fishing equipment. Petitioners failed to offer any documents or other credible evidence that respondent was in error in determining that $ 30,000 of the purchase price was for inventory. Based on the record, petitioners have failed to rebut the presumption that respondent's determination is correct. We hold that $ 30,000 of the purchase price of the store was for the purchase of inventory and should have been separated from the installment computation. Sec. 453(b)(2)(B). We also hold that the $ 30,000 downpayment is includable in petitioners' gross income for 1986. Issue 2. Depreciation Recapture Under Sections 1250 and 1245
Respondent increased petitioners' taxable income by $ 2,703 for section 1250 depreciation recapture, resulting from the sale of petitioners' store. Section 1250 provides for the recapture of depreciation as ordinary income upon the disposition of section 1250 property. *490 Section 1250 property is real property which is or has been property of a character subject to the allowance for depreciation as provided in section 167 (property used in a trade or business). Sec. 1250(c). If section 1250 property is disposed of, the amount of gain which is ordinary income is the lower of (1) depreciation deductions allowed or allowable to the taxpayer to the extent they exceed the amount of depreciation adjustments, which would have resulted if such adjustments had been determined under the straight-line method of adjustment, or (2) in the case of a sale, the excess of the amount realized over the adjusted basis of such property. Sec. 1250(a)(1)(A), (b)(1), (b)(3). Section 453(i) provides that any recapture income shall be recognized in the year of disposition. The building petitioner sold to Ms. Cenac was real property used in petitioner's trade or business; thus, it would be subject to section 1250 depreciation recapture. Respondent's depreciation-recapture computation was based in part on the information provided on petitioners' 1986 Federal income tax return. [4] Petitioners failed to provide any evidence that would rebut the presumption that respondent's *491 determination is correct; therefore, we sustain respondent's determination of $ 2,703 for depreciation recapture. Respondent also increased petitioners' taxable income by $ 16,000 for section 1245 depreciation-recapture income, resulting from the sale of equipment used in the store. Section 1245(a)(1) provides for the recapture of depreciation as ordinary income upon the disposition of section 1245 property. Personal property used in a trade or business is section 1245 property. Sec. 1245(a)(3)(A). The amount recaptured is the amount by which the lower of the recomputed basis of the property or the amount realized from a sale exceeds the adjusted basis of the property. Sec. 1245(a)(1). Recomputed basis means the adjusted *492 basis of the property recomputed by adding thereto all adjustments reflected in such adjusted basis on account of deductions allowed or allowable to the taxpayer for depreciation. Sec. 1245(a)(2). Respondent assumed that the equipment had an original cost basis at least equal to its value at the time of the 1986 sale and that the equipment had been fully depreciated. [5] Thus, in respondent's view, the entire value of the equipment should be recaptured as ordinary income. Petitioners disagree with this determination. Section 1245 depreciation requires that the recomputed basis of the property be ascertained. Sec. 1245(a)(1) and (2). This necessitates an inquiry into the adjusted basis of the property, which is the cost less depreciation allowed or allowable. [6]Sec. 1245(a)(2). Section 167(a) provides that there shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion and wear and tear of property used in *493 a trade or business. Petitioners failed to provide respondent with any documentation regarding the value or cost of the equipment sold with the store. Respondent determined the value of the equipment in the store at the time of sale to be $ 16,000. Ms. Cenac testified that petitioner told her that the equipment sold with the store was worth about $ 15,000. Petitioners maintain that they did not own all the equipment included in respondent's valuation. While respondent does not place a value on each item of equipment, respondent's $ 16,000 value apparently includes the value of some coolers that were in the store at the time of sale. [7] Ms. Cenac testified that she believed *494 petitioners owned the coolers and that the coolers were part of the sale. Petitioners maintain that the coolers were owned by the Coca Cola Co. (Coca Cola) and that Coca Cola placed them in the store because they sold nothing but Coke. Petitioner testified that Coca Cola agreed to allow the coolers to remain in the store after the change in ownership so long as the new owners "kept it going." Ms. Cenac testified that she subsequently found out that only one of the coolers was owned by Coca Cola. Based on the record, we find that the portion of the sales price allocable to the equipment at the time of sale was the $ 15,000 referred to by Ms. Cenac. From the record, it appears that the value attributed to the four coolers *495 by respondent is $ 11,500. [8] We find that petitioner did not own one of the two-door coolers, and it therefore should not have been subject to section 1245 depreciation recapture. We conclude that the $ 15,000 allocable to the sale of equipment should be reduced by $ 2,300 for purposes of determining the amount subject to the recapture provisions. This leaves $ 12,700 ($ 15,000 - $ 2,300) allocable to the remaining equipment. We hold that the portion of the sales price allocable to depreciable equipment is $ 12,700 and that this amount is subject to depreciation recapture. [9]
*496 Issue 3. Capital Gain
Petitioners reported capital gain of $ 427 resulting from the 1986 installment payments. Respondent increased petitioners' capital gain by $ 147. [10] Respondent determined the gross profit percentage for purposes of the 1986 installment-sale calculation to be 51 percent. This was based on the figures respondent used in the notice of deficiency. Because we have redetermined some of these items, the gross profit percentage will have to be recalculated. Issue 4. Schedule C Expenses and Purchases
Petitioners reported $ 16,659 of Schedule C expenses. Petitioners were able to substantiate advertising expenses. [11] Respondent disallowed 25 percent of the remaining expenses. Petitioners failed to provide support for the *497 remaining expenses that were disallowed; therefore, we sustain respondent's determination. Petitioners reported purchases of $ 75,101 for 1986. These purchases were included in 1986 cost of goods sold. [12] *498 Cost of goods sold is an offset to gross receipts [13] in determining business income. Metra Chem Corp. v. Commissioner, 88 T.C. 654, 661 (1987); see sec. 1.61-3(a), Income Tax Regs. Cost of goods sold must be substantiated. Kuhl v. Commissioner, T.C. Memo. 1993-338; Wright v. Commissioner, T.C. Memo. 1993-27. Petitioners failed to provide any support for the purchases. Respondent allowed petitioners 75 percent of the amount of purchases reported on their 1986 return and disallowed the remaining 25 percent. We sustain respondent's determination with respect to cost of goods sold. Issue 5. Sale of Land, Building and Furniture
During 1986, petitioner sold a building, 6 acres of land, and furniture and fixtures to his stepfather and mother for $ 15,000 and their assumption of the balance of petitioner's mortgage loan. [14] *499 These assets were used in the operation of a tavern. According to petitioner, the furniture and fixtures that were in the tavern at the time of sale included a pool table, jukebox, flat Coke machine, and some old tables and chairs. Respondent's determination focused solely on the sale of the furniture. [15] Respondent determined that both the recomputed basis of the furniture and the amount realized from the sale of furniture was $ 15,000 and that the adjusted basis was zero. See sec. 1245(a)(1)(A), (B)(i). Thus, respondent added $ 15,000 of ordinary income to petitioners' taxable income. Petitioner testified that the furniture and fixtures respondent included in the recapture calculation were acquired from his mother and that he had not paid for them. Petitioner argues that when he sold the land, building, and its contents to his stepfather and mother, petitioner was in effect giving the furniture back to his mother. Of course, if petitioner had never purchased the furniture, he had no basis in the furniture to depreciate. [16]
*500 Based on the record, we accept petitioner's testimony that he never acquired a depreciable basis in the furniture. We hold that there was no sale of furniture subject to depreciation recapture. Issue 6. Additions to Tax
Respondent determined that petitioners are liable for additions to tax under section 6653(a)(1)(A) and (B). Respondent's determination is presumed correct, and petitioners bear the burden of proving otherwise. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). Section 6653(a)(1)(A) imposes an addition to tax equal to 5 percent of the underpayment if any part of any underpayment is due to negligence or disregard of rules or regulations. Negligence includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code. Sec. 6653(a)(3). Negligence is lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners have failed to satisfy their burden of proof. Petitioners failed to report the $ 30,000 downpayment received in 1986. *501 They also failed to report interest income of $ 54 and rental income of $ 1,300 [17] and failed to provide documentation regarding Schedule C expenses and purchases. Therefore, we sustain respondent's determination. Section 6653(a)(1)(B) imposes an additional tax equal to 50 percent of the interest payable on the portion of the underpayment attributable to negligence. In the notice of deficiency, respondent explains that the understatement attributable to negligence is the understatement caused by the Schedule C adjustments of $ 52,393 (sale of inventory, disallowed purchases, and disallowed section 162 expenses), interest income of $ 54, and rental income of $ 1,300. As previously determined, petitioners have failed to satisfy their burden of proof regarding negligence with respect to these items. Respondent also determined that petitioners are liable for an addition to tax under section 6661 for a substantial understatement attributable *502 to Schedule C adjustments of $ 52,393 (sale of inventory, disallowed purchases, and disallowed section 162 expenses), interest income of $ 54, and rental income of $ 1,300. Section 6661(a) provides for an addition to tax equal to 25 percent of the amount of any underpayment attributable to a substantial understatement of tax. Pallottini v. Commissioner, 90 T.C. 498 (1988). An understatement is substantial if it exceeds the greater of $ 5,000 or 10 percent of the tax required to be shown on the return. Sec. 6661(b)(1)(A). The amount of the understatement may be reduced under section 6661(b)(2)(B) for amounts adequately disclosed or supported by substantial authority. Petitioners' understatement was substantial within the meaning of section 6661(b)(1)(A). Petitioners made no argument with respect to this addition to tax. There is no substantial authority supporting the positions taken by petitioners. Also, petitioners failed to make relevant disclosures on their return or in a statement attached to the return. See Schirmer v. Commissioner, 89 T.C. 277, 286 (1987); Rev. Proc. 87-48, 1987-2 C.B. 645 *503 (applicable to returns filed in 1986). Therefore, we sustain respondent's determination with respect to this issue. Decision will be entered under Rule 155. Footnotes
1. References to petitioner in the singular will refer only to Carl Wesley Murry.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Petitioners actually reported $ 111,000 as the selling price, but the parties have stipulated it as $ 100,000.↩
4. Using cost figures taken from petitioners' 1986 return, respondent calculated accelerated depreciation to be $ 12,200.17 and straight-line depreciation to be $ 9,496.68. Therefore, respondent determined the amount subject to depreciation recapture to be $ 2,703.49 ($ 12,200.17 - $ 9,496.68).↩
5. No depreciation deductions were claimed on petitioners' 1986 Schedule C.↩
6. Since petitioner failed to provide respondent with any documentation as to cost, respondent assumed the equipment cost at least what petitioner received from its sale. Petitioner offered some evidence as to the cost of certain items of equipment, but overall the evidence was inconclusive and supported only by petitioner's oral testimony.↩
7. The coolers are often referred to in the record as doors and boxes. Although the use of the terms doors and boxes for coolers is confusing, it appears from the sales contract that there were four coolers with a total of 10 doors -- two coolers with three doors and two coolers with two doors.↩
8. Ms. Cenac testified that petitioner represented to her that he had paid $ 1,150 per door and that there were 10 doors. Respondent appears to rely on a value of $ 1,150 per door.↩
9. Petitioner testified that the equipment he owned at the time of sale consisted of a 20-year old deep freeze given to petitioner, a line machine for lining spinning reels that was worth approximately $ 500, a cash register that cost approximately $ 250, a stove, an ice cream mixer that cost approximately $ 150, and a stainless steel sink. In addition to petitioner's testimony, the sales contract provides that there were gas tanks, four upright coolers (two 3-door coolers and two 2-door coolers), one flat Coke machine, and four ceiling fans. Ms. Cenac testified that there were also shelves sold with the store.↩
10. Respondent's determination was based on petitioners' having received principal payments of $ 2,814.89 in 1986. This is an erroneous figure. The parties agree that principal payments received by petitioners during the taxable year 1986 actually totaled $ 2,093.55.↩
11. Although petitioners only reported $ 25 of advertising expenses, they substantiated $ 321. Respondent allowed $ 321.↩
12. Petitioners reported ending inventory for 1986 as $ 0.↩
13. Although petitioners failed to report any returns and allowances on their return, respondent allowed a reduction to gross receipts of $ 244 after petitioners provided documentation.↩
14. The amount of the mortgage assumed is not clear from the record. Petitioner testified that he purchased the land and the building sometime in late 1984 or early 1985 for $ 22,000 with $ 8,500 as a downpayment. Petitioner testified that he had made approximately 16 payments of $ 169. Furthermore, petitioner testified that the mortgage "pays out" in 1996 or 1997.↩
15. Respondent did not make a determination as to the value of the building and land or as to petitioner's gain or loss resulting from the sale of the building and land. Petitioner testified that he spent another $ 14,000 renovating the building, including $ 7,000 for a new air-conditioning system.↩
16. There is no evidence as to how long petitioners had operated the tavern as a trade or business. Petitioner testified that he purchased the land and building in late 1984 or early 1985 and sold the land and building in 1986. Respondent states on brief that: "Petitioners also owned a tavern prior to and during the taxable year 1986, which they were not operating." (Fn. ref. omitted.)↩
17. The parties agree that petitioners failed to report interest and rental income.↩