FRANK J. AND KATHRYN A. BORSODY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Borsody v. Commissioner
Docket Nos. 7690-90, 28454-91
United States Tax Court
T.C. Memo 1993-534; 1993 Tax Ct. Memo LEXIS 549; 66 T.C.M. (CCH) 1342; November 18, 1993, Filed *549 Decision will be entered for respondent. Petitioner husband, a medical doctor, and petitioner wife, a noted sidesaddle rider, operated a farm at which horses were boarded, bred, and trained. Over a number of years, petitioners incurred substantial losses in such operation. Petitioners resided on the farm, and the income from petitioner husband's medical practice allowed them to absorb the losses incurred. 1. Held: Based on all the facts and circumstances, the horse farm activity was not conducted for profit within the meaning of sec. 183, I.R.C.
2. Held, further, petitioners failed to substantiate various Schedule A deductions claimed for their 1988 and 1989 taxable years. 3. Held, further, sec. 6661, I.R.C., additions to tax are sustained against petitioners for their 1987 and 1988 taxable years. 4. Held, further, sec. 6651(a)(1), I.R.C., addition to tax is sustained against petitioners for their 1988 taxable year. 5. Held, further, sec. 6653(a)(1), I.R.C., addition to tax is sustained against petitioners for their 1988 taxable year. 6. Held, further, sec. 6662(a), I.R.C., addition to tax is sustained against petitioners *550 for their 1989 taxable year. Frank J. Borsody, pro se. For respondent: Clement Shugerman. HALPERN
HALPERN
MEMORANDUM OPINION HALPERN, Judge: By notices of deficiency dated February 6, 1990 (docket No. 7690-90) and September 12, 1991 (docket No. 28454-91), respondent determined deficiencies, additions to tax, and a penalty against petitioners as follows: Additions to Tax Penalty
Year
Deficiency
6651(a)(1)
6653(a)(1)
6661 6662(a)
1987
$ 22,284
-- -- $ 5,571
-- 1988
22,683
$ 1,134
$ 1,279
5,671
-- 1989
28,881
-- -- -- $ 5,776
In her amended answer for petitioners' 1987 taxable year (docket Number 7690-90), respondent increased her deficiency determination against petitioners by $ 16,297 and increased the section 6661 addition to tax by $ 4,074. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The cases arising from the notices of deficiency and amended answer have been consolidated for purposes of trial, briefing, and opinion. The issues remaining for decision are: (1) Whether petitioners' *551 horse farm constituted an activity not engaged in for profit within the meaning of section 183(a), (2) whether petitioners properly substantiated various Schedule A deductions disallowed by respondent for petitioners' 1988 and 1989 taxable years, (3) whether petitioners are subject to section 6661 additions to tax for their 1987 and 1988 taxable years, (4) whether petitioners are subject to the section 6651(a)(1) addition to tax for their 1988 taxable year, (5) whether petitioners are subject to the section 6653(a)(1) addition to tax for their 1988 taxable year, and (6) whether petitioners are subject to the section 6662(a) penalty for their 1989 taxable year. [1]
*552 Background
Some of the facts have been stipulated and are so found. The stipulation of facts filed by the parties and attached exhibits are incorporated herein by this reference. Petitioners are husband and wife, who, for the years in issue, made joint returns of income, computed on the basis of a calendar year. At the time the petitions in the instant case were filed, petitioners resided in Gainesville, Virginia. Petitioner Frank Borsody (Dr. Borsody) is a medical doctor, who has carried on a successful medical practice. From 1984 through 1990, Dr. Borsody reported earnings from that practice as follows: Year
Wage Income
1984
$  77,497
1985
76,386
1986
76,498
1987
78,119
1988
98,658
1989
163,899
1990
118,899
During the years in issue, petitioner Kathryn Borsody (Mrs. Borsody), with assistance from Dr. Borsody, operated a horse farm called the Century Oaks Farm (the farm). At the time of trial, the farm boarded 13 horses, 8 of which belonged to petitioners, and 5 of which were cared for on behalf of others. For all of the years in issue, petitioners resided at the farm. In 1989, the farm was relocated to its present location, in Gainesville, Virginia. *553 Mrs. Borsody was responsible for virtually all of the activities involved in the farm's operation, ranging from feeding and caring for the horses to mowing the fields and cleaning out the stalls. She also provided lessons in the discipline of sidesaddle riding. Mrs. Borsody's students paid for their instruction either in cash or by performing maintenance services with respect to the horses or the farm facilities. Mrs. Borsody worked on the farm approximately 12 hours a day, 7 days a week. Mrs. Borsody is a noted sidesaddle rider, who, for the last 10 years, has competed on the show circuit. On the show circuit, a trophy is retired if it is won by an individual on three occasions. In addition to winning various honors and awards, Mrs. Borsody has retired the trophy in a number of competitions, including the Washington International Horse Show, the Devon (Pennsylvania) Horse Show, and the Harrisburg Horse Show. Petitioners maintained extensive records on their horses, detailing the medical treatment, training activities, and competitive awards of each horse. Beyond the information compiled with respect to the horses, however, petitioners kept no financial books and records *554 regarding the farm's operations, save for canceled checks and receipts that were bound by rubber band according to category. Petitioners have a long history of losses from the related activities of operating the farm and competing in horse shows. Petitioners' tax returns for 1979, 1980, and 1982 though 1986 were audited by respondent, and petitioners were allowed net losses in the following amounts: Year
Gross Income
Verified Expenses
Net Loss
1979
$ 12,439
$ 36,105
$ 23,666
1980
36,510
37,897
1,387
1981 [2]
-- -- -- 1982
34,960
41,171
6,211
1983
13,568
34,524
20,956
1984
8,290
49,427
41,434
1985
8,180
48,197
40,017
1986
800
34,266
33,466
For the years in issue, petitioners reported income, expenses, and losses from the operation of the farm as follows: Year
Gross Income
Claimed Expenses
Net Loss 1987 [3]
$ 6,600
$ 115,554
$ 108,954
1988
780
72,933
72,153
1989
0
88,440
88,440
*555 For their 1990 taxable year, petitioners reported $ 3,000 of gross income and net losses of $ 134,384 with respect to the farm. In 1991, petitioners showed a net profit of $ 20,019. That profit was attributable to the sale of a horse ("Can We Talk") for $ 175,000. Discussion
I. Section 183
The first issue we address is whether the farm, a horse farm operated by petitioners, constituted an activity "not engaged in for profit". Sec. 183(a). [4]
*556 a. Determining Whether an Activity is Engaged in for Profit
An activity is engaged in for profit if the taxpayer has an "actual and honest objective of making a profit." Keanini v. Commissioner, 94 T.C. 41, 46 (1990), quoting Dreicer v. Commissioner, 78 T.C. 642, 644-645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). The taxpayer's expectation of profit need not be a reasonable one; it is sufficient if the taxpayer has a bona fide expectation of realizing a profit, regardless of the reasonableness of such expectation. Dunn v. Commissioner, 70 T.C. 715, 720 (1978), affd. 615 F.2d 578 (2d Cir. 1980); sec. 1.183-2(a), Income Tax Regs.
The regulations promulgated under section 183 list the following nine relevant factors that should normally be taken into account in determining whether an activity is engaged in for profit: (1) The manner in which the taxpayer carried on the activity, (2) the expertise of the taxpayer or his advisors, (3) the time and effort expended by the taxpayer in carrying on the activity, (4) the *557 expectation that assets used in the activity may appreciate in value, (5) the success of the taxpayer in carrying on other similar or dissimilar activities, (6) the taxpayers' history of income or loss with respect to the activity, (7) the amount of occasional profit, if any, which is earned, (8) the financial status of the taxpayer, and (9) the extent to which elements of personal pleasure or recreation are involved. Sec. 1.183-2(b), Income Tax Regs. However, that list is by no means exclusive, and it is not intended that only those factors are to be taken into account in making that determination. Id. Moreover, the regulations provide that no one factor is determinative. Id. Likewise, we do not simply list factors as supporting the position of one side or the other, awarding victory to the side with the longer list. Taube v. Commissioner, 88 T.C. 464, 480 (1987); sec. 1.183-2(b), Income Tax Regs. Rather, whether a taxpayer possesses the relevant profit objective is a question of fact to be determined in light of all the facts and circumstances. E.g., Taube v. Commissioner, supra; sec. 1.183-2(b), Income *558 Tax Regs. The burden of proving such objective is on petitioners for 1988 and 1989; for 1987, because the absence of a profit objective was first raised in respondent's answer, the burden is on respondent. See Rule 142(a). With the above in mind, we consider the facts, circumstances, and arguments presented to us. b. Analysis
Most of the facts herein set forth have been stipulated, and it is beyond dispute that, with regard to the farm, petitioners suffered generally increasing losses for 11 out of the 12 years for which we have data. Respondent suggests that the farm was nothing more than Mrs. Borsody's unprofitable hobby, with the petitioners' true financial intention being not to earn a profit but to reduce the out-of-pocket cost of that hobby by deducting its losses against Dr. Borsody's substantial medical income. Petitioners' argue vehemently that the farm was not a hobby. there are no recreational aspects to the horse business. Unless you consider digging post holes, fencing, slinging manure, driving a truck, breaking toes, arms, and fingers, standing mare watch, feeding, caring and sheltering, being kicked and bitten, sweating and freezing by terms recreation? *559 * * *
We have no doubt that petitioners devoted extraordinary amounts of time and energy to the farm and that it was hard work, often unenjoyable, for both of them. Nevertheless, hard work alone does not necessarily distinguish a hobby from a for-profit activity. E.g., Smith v. Commissioner, T.C. Memo. 1993-140. Also, as we have said: "a record of substantial losses over many years and the unlikelihood of achieving a profitable operation are important factors bearing on the taxpayer's true intention." Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion, 647 F.2d 170 (9th Cir. 1981). The losses incurred here were substantial (totaling $ 571,068 for the years for which we have records) and tended to increase over time. From 1979, when the farm's loss was $ 23,666, losses generally increased each year until, in 1990, they were $ 134,384. [5] Yes, the farm showed a modest profit in 1991 of $ 20,019. That profit, however, was due to the sale of one horse for $ 175,000; absent that sale, the farm would have suffered a 1991 loss of approximately $ 145,000. Nothing *560 in the record convinces us that petitioners could have continued to make sales that would have turned a yearly farm profit, much less have recouped prior losses. In Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967), we stated: the presence of losses in the formative years of a business, particularly one involving the breeding of horses, is not inconsistent with an intention to achieve a later profitable level of operation, bearing in mind, however, that the goal must be to realize a profit on the entire operation, which presupposes not only future net earnings but also sufficient net earnings to recoup the losses which have meanwhile been sustained in the intervening years.
*561 The farm's record of losses over the 12 years for which we have data (losses of $ 571,068) is persuasive evidence that the petitioners did not, during the years in question, expect to make a profit from the farm, Golanty v. Commissioner, supra; sec. 1.183-2(b)(6), Income Tax Regs, and we so find. Our finding is consistent with other factors that we have considered. Prior to and during the years in issue, petitioners did not operate the farm in a business-like fashion. Although they kept extensive records concerning the care, training, and competitive accomplishments of their horses, they maintained no books and records regarding the operation of the farm, save for canceled checks and receipts that were bound by rubber band according to category. The record contains no indication that petitioners entered into any type of financial planning or engaged in analysis of their books and records with an eye toward increasing the farm's profitability. See sec. 1.183-2(b)(1), Income Tax Regs.
Petitioners also claim that, subsequent to the years in issue, they hired an accountant, instituted a system of computerized record keeping, and generally began *562 to treat the horse farm more as a business. Those factors, however, do not materially impact our section 183 analysis for the years in issue. Notwithstanding petitioners' protestations regarding the hard work involved with the farm (which we have no reason to disbelieve), we believe that the farm presented significant elements of personal pleasure for both petitioners. We have no doubt that many people keep and ride horses for recreation and compete in horse shows for other than pecuniary reasons. Mrs. Borsody is an accomplished rider, who has won numerous trophies for her riding. She did not deny that her riding and show activities give her pleasure, and we infer that they do. Clearly, her husband takes pride in her accomplishments. We cannot conclude that the virtues of farm life and the show ring do not provide an adequate and sufficient explanation for the hard work and losses undertaken by petitioners. See sec. 1.183-2(b)(9), Income Tax Regs. Also, we note that, for the years for which we have records, Dr. Borsody generally earned substantially more than the losses reported from the farm. In fact, for the years in question, those losses included substantial depreciation *563 ($ 59,946), which is a noncash cost, but which can serve to shelter unrelated, cash income. The existence of a family income independent from farm operations reinforces our conclusion that, although the farm involved hard work, it was not necessarily operated for profit. See sec. 1.183-2(b)(8), Income Tax Regs.
Finally, we address petitioners' argument that, in determining whether the farm was operated for profit, we should take into account the petitioners' expectations that the farm itself would appreciate in value. See sec. 1.183-2(b)(4), Income Tax Regs. Apparently, the farm was removed to its present location, in Gainesville, Virginia, in late 1988 or early 1989, at which time that property (the Gainesville property) was purchased for $ 550,000. Dr. Borsody testified that the Gainesville property had appreciated by several hundred thousand dollars by the time of trial, and was then worth $ 910,000. As evidence thereof, petitioners presented us with an undated document, entitled "Estimated Sellers Settlement Charges", showing a sales price of $ 910,000 for an unspecified piece of property. Being undated and without reference to the Gainesville property, we give that document *564 no weight. Dr. Borsody's testimony is based on what he claims is an appraisal of the Gainesville property. That appraisal is not in evidence and, thus, his testimony is unsupported. We accord it little weight. Also, appreciation of the Gainesville property has no significance for 1987, since it was not then owned by petitioners. A settlement statement supporting Dr. Borsody's testimony as to the purchase price of the Gainesville property ($ 550,000) shows a settlement date of January 24, 1989. We find that to be the case and, thus, see no significance of any appreciation before 1989. Indeed, petitioners have not convinced us that, in 1989, they had any expectation that the Gainesville property would appreciate in value. For the reasons stated, we find that the farm was not an activity engaged in for profit during the years in question. Accordingly, we hold that petitioners' losses from the farm are allowed only to the extent provided for in section 183. II. Substantiation of Schedule A Deductions
Respondent disallowed, for lack of adequate substantiation, various Schedule A deductions claimed by petitioners for their 1988 and 1989 taxable years, in the amounts *565 of $ 8,681 and $ 21,516, respectively. Petitioners have introduced no evidence on the Schedule A substantiation issue. Since petitioners have the burden of proof on that score, which they have taken no steps to meet, we sustain respondent's deficiencies with respect to the disallowed Schedule A deductions. Rule 142(a). III. Additions to Tax
A. Section 6661
Respondent also determined that petitioners are subject to section 6661 additions to tax for substantial understatement of liability for their 1987 and 1988 taxable years. Section 6661(a), for the years in issue, provides that, "If there is a substantial understatement of income tax for any taxable year, there shall be added to the tax an amount equal to 25 percent of the amount of any underpayment attributable to such understatement". Under section 6661(b)(1)(A), there is a substantial understatement where the understatement exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Respondent's deficiency determinations, which we have upheld, exceed 10 percent of petitioners' corrected liability, and, unless that liability can be reduced by section 6661(b)(2)(B), petitioners *566 will be subject to the section 6661 additions to tax. Section 6661(b)(2)(B) makes provision for the reduction of an understatement by that portion of the understatement which is attributable to: (i) the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment, or (ii) any item with respect to which the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return.
We have already held that petitioners did not conduct their farm activities with a bona fide intention of earning a profit, and no authority has been presented that would support the claimed deductions in the light of the facts of this case. Antonides v. Commissioner, 91 T.C. 686, 702-704 (1988), affd. 893 F.2d 656 (4th Cir. 1990); Crim v. Commissioner, T.C. Memo. 1989-249, affd. without published opinion 899 F.2d 1221 (6th Cir. 1990). As to adequacy of disclosure, no disclosure statements were attached to petitioners' returns and the information included in the returns was insufficient *567 to disclose the facts on which the deductions turned. Crim v. Commissioner, supra.Thus, any disclosure that was made was not sufficient to reduce the liability pursuant to section 6661(b)(2)(B). See Schirmer v. Commissioner, 89 T.C. 277, 284-285 (1987). Accordingly, we sustain respondent's section 6661 additions to tax against petitioners for their 1987 and 1988 taxable years. B. Section 6653(a)(1)
Respondent also determined a section 6653(a)(1) addition to tax for negligence against petitioners for their 1988 taxable year. For that year, section 6653(a)(1) imposes an addition to tax equal to 5 percent of the underpayment of the amount required to be shown on a taxpayer's return if any part of that underpayment is due to negligence or disregard of rules or regulations. Negligence is defined as the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners have the burden of proof on that issue. Rule 142(a). As we explained in Gruse v. Commissioner, T.C. Memo. 1990-187, *568 "When this Court has found that a taxpayer's activity under section 183 was not engaged in for profit, it has also approved respondent's determination, in appropriate cases, that additions to tax for negligence should be imposed." One basis for such a holding is the failure of a taxpayer to maintain adequate records with respect to the challenged activity. See Faulkner v. Commissioner, T.C. Memo. 1985-536 (inadequate records maintained with respect to both a horse breeding operation and a fireplace business); and Sealy v. Commissioner, T.C. Memo. 1980-7 (lack of account books or ledgers in horse farming operation). Here, petitioners concede that they kept neither account books nor ledgers with respect to the farm. Moreover, as we held in section II of this opinion, petitioners failed to maintain any type of books and records adequate to substantiate their claimed Schedule A deductions for their 1988 taxable year. Accordingly, we sustain respondent's addition to tax for negligence for petitioners' 1988 taxable year. C. Section 6651(a)(1)
Respondent also determined a section 6651(a)(1) addition to tax against petitioners *569 for their 1988 taxable year. Section 6651(a)(1) provides that, in the case of a failure to file an income tax return by the due date, there shall be imposed an addition to tax for such failure of 5 percent of the amount of tax, reduced by timely payments and credits under section 6651(b)(1), for each month or portion thereof during which the failure continues, not exceeding 25 percent in the aggregate unless such failure is due to reasonable cause and not due to willful neglect. Petitioners' 1988 tax return was stamped as received by respondent on April 26, 1989, some 9 days after the date it was due. [6]Section 7502(a) provides that if any return required to be filed on or before a prescribed date is delivered by U.S. mail after that required date, then the date of the U.S. postmark stamped on the cover in which such return is mailed shall be deemed to be the date of delivery. The burden of proving timely mailing rests with the taxpayer. Rule 142(a); Garrett & Garrett, P.C. v. Commissioner, T.C. Memo 1993-453. *570 On brief, petitioners allege that they properly mailed their 1988 tax return on Monday, April 17, 1989. Nevertheless, the cover in which petitioners' tax return was mailed (presumably bearing the postmark date of such mailing) is absent from the record. Moreover, the postmark date recorded on the return itself by respondent is indecipherable. When the date of filing cannot be established by a tangible postmark, this Court has considered indirect testimonial evidence of mailing. Mitchell Offset Plate Service, Inc. v. Commissioner, 53 T.C. 235, 239-240 (1969); Garrett & Garrett, P.C. v. Commissioner, supra. Here, however, we are presented with no testimonial or other evidence whatsoever on the issue of timely mailing. Thus, petitioners have failed to meet their burden of proof on that issue, and we sustain respondent's section 6651 addition to tax. D. Section 6662(a)
Finally, respondent has determined a section 6662(a) penalty against petitioners for their 1989 taxable year. Section 6662(a) provides for the imposition of a penalty on any portion of an underpayment which is attributable to one or more of the *571 following: (1) Negligence or disregard of rules or regulations, (2) any substantial understatement of income tax, (3) any substantial valuation misstatement under chapter one, (4) any substantial overstatement of pension liabilities, or (5) any substantial estate or gift tax valuation understatement. As in the case of their 1987 and 1988 taxable years, petitioners substantially underreported their tax liability for 1989. Moreover, that understatement is unreduced by any items, the treatment of which is (1) supported by substantial authority, or (2) the subject of adequate disclosure by petitioners. Sec. 6662(d)(2)(B). Accordingly, we sustain respondent's section 6662(a) penalty against petitioners for their 1989 taxable year. Decision will be entered for respondent. Footnotes
1. Respondent disallowed some of petitioners' deductions for expenses claimed with respect to the horse farm on the alternative theory that petitioners had failed to (1) substantiate payment of the expenses and (2) establish the ordinary and necessary nature of some of those expenses within the meaning of sec. 162. Respondent, however, has not addressed that alternative theory either at trial or on brief. Accordingly, we take respondent's alternative theory to have been abandoned and therefore conceded. We would not have reached that theory in any case, however, since we hold for respondent on her sec. 183↩ argument.
2. Neither petitioners nor respondent has placed petitioners' 1981 tax return in evidence.↩
3. For the year 1987, $ 49,372 of the deductions claimed by petitioners were reported on Schedule C with respect to their horse showing activities, rather than on Schedule F, which dealt with the operations of the farm. We have not treated those as separate activities and see no significance in such treatment.↩
4. Sec. 183(a) provides: In the case of an activity engaged in by an individual * * * if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section.
Sec. 183(c) defines an "activity not engaged in for profit" as follows: For purposes of this section, the term "activity not engaged in for profit" means any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212↩.
5. As previously noted, petitioners' 1981 tax return was not placed into the record by either party. Nevertheless, we have long adhered to the rule that the failure of a party to introduce evidence within his possession and which, if true, would be favorable to him, gives rise to the presumption that, if produced, such evidence would be unfavorable. Recklitis v. Commissioner, 91 T.C. 874, 890 (1988); Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513↩ (10th Cir. 1947). If the 1981 income figures from the horse farm were in any way beneficial to petitioners' case, we believe it safe to assume that such information would have been placed before this Court. The absence of such information therefore gives rise to a negative presumption.
6. Apr. 15, 1989, fell on a Saturday. Thus, under sec. 7503 the due date for petitioners' 1988 tax return was Monday, Apr. 17, 1989.↩